CORMACK v AMERICAN UNDERWRITERS CORPORATION

Docket No. 78-2768. Submitted October 3, 1979, at Detroit.—Decided December 18, 1979.

D. H. Cormack, a resident of London, England, purchased an automobile in Detroit and requested the salesman to arrange for insurance coverage on the automobile through Cormack's insurer, Lloyds of London. The salesman telephoned a representative of American Underwriters Corporation, who later the same day informed the salesman that he had "taken care of it". This information was conveyed to Cormack, who then drove the automobile to Chicago where it was promptly stolen and stripped. Two days after the sale of the car, the American Underwriters representative contacted the salesman and informed him that the London insurer had refused to extend coverage and that the car was uninsured. Cormack thus received no payment for the loss of the vehicle. Cormack brought an action in Common Pleas Court of Detroit against American Underwriters. Lloyds of London was added as a party defendant, but was granted a directed verdict at the close of plaintiff's proofs. The jury returned a verdict in favor of the plaintiff, but the court, Harold Hood, J., granted American Underwriters' motion for a judgment notwithstanding the verdict. Cormack appealed to Wayne Circuit Court, which affirmed, Horace W. Gilmore, J. Cormack appeals by leave granted, alleging that the trial court erred in finding that there was insufficient evidence to support the jury's determination that an oral binder of insurance was in existence, in finding that there was no evidence to support a jury verdict of misrepresentation, and in granting defendant's motion for a directed verdict on plaintiff's allegation of fraud. *Held:*

1. Under the circumstances here there was an oral binder of insurance on the automobile at the time it was stolen. There-

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 5 Am Jur 2d, Appeal and Error §§ 608, 886.
[2] 43 Am Jur 2d, Insurance § 216 *et seq.*
[3] 48 Am Jur 2d, Insurance § 200 *et seq.*
[4] 37 Am Jur 2d, Fraud and Deceit § 12.
[6] 37 Am Jur 2d, Fraud and Deceit § 332.

fore, the trial court erred in granting the motion for a judgment notwithstanding the verdict and the jury verdict is reinstated.

2. There was sufficient evidence presented to have supported a jury finding of fraud. Therefore, the trial court erred in directing a verdict for the defendant on that issue.

Reversed, and the jury verdict is reinstated.

1. APPEAL AND ERROR — MOTIONS — JUDGMENT NOTWITHSTANDING THE VERDICT.

The Court of Appeals, when reviewing the grant of a motion for a judgment notwithstanding the verdict, must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence; the grant of a defendant's motion for a judgment notwithstanding the verdict is improper if reasonable minds could honestly disagree as to whether the plaintiff has satisfied his burden of proof on the necessary elements of his cause of action.

2. INSURANCE — BINDERS.

An insurance binder is a contract for temporary insurance pending issuance of an insurance policy unless proper notice is given of election to terminate by the insurer.

3. INSURANCE — CONTRACTS — ORAL CONTRACT — ELEMENTS.

The elements necessary to effectuate an oral contract of insurance are: 1) subject matter; 2) the risk; 3) premium; 4) duration of the risk; and 5) the amount of insurance; the absence of an express agreement upon each of those essential terms is not fatal to an oral contract of insurance if the intention of the parties as to those particulars can be gathered from the circumstances of the case.

4. FRAUD — FRAUDULENT MISREPRESENTATIONS — ELEMENTS.

The elements of fraudulent misrepresentation are 1) a false representation by the defendant, 2) knowledge or belief on the part of the defendant that the representation is false, 3) an intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation, 4) justifiable reliance upon the misrepresentation on the part of the plaintiff, and 5) damage to the plaintiff resulting from such reliance.

5. APPEAL AND ERROR — MOTIONS — DIRECTED VERDICTS.

The Court of Appeals views the evidence in the light most favorable to the nonmoving party when reviewing a motion for

a directed verdict; if the evidence, when so viewed, establishes a prima facie case a directed verdict is improper.

6. FRAUD — FALSE REPRESENTATIONS — THIRD PARTIES.

A third party can maintain a tort action, for damages resulting from a fraud, against a party who made false statements where a party makes false representations to another with the intent or knowledge that they be exhibited or repeated to the third party for the purpose of deceiving that third party.

*Marvin D. Sharon,* for plaintiff.

*Stewart, O'Reilly, Cornell, Lascoe & Rancilio, P.C.,* for defendant.

Before: T. M. BURNS, P.J., and BRONSON and R. M. MAHER, JJ.

PER CURIAM. The plaintiff, D. H. Cormack, is a resident of London, England. He arrived in Detroit on April 1, 1974. The next day, he purchased a new Lincoln automobile at the Downtown Ford dealership for $6,900. He asked the salesman, Richard Warner, to arrange with Lloyds of London to extend insurance coverage to this automobile.

On the same day, April 2, 1974, Warner spoke on the telephone with William Shilson, a representative of American Underwriters, the defendant herein. Warner testified that at the time of this conversation, he had a copy of Mr. Cormack's insurance certificate covering plaintiff's other vehicle in England. Warner gave Shilson the information on this insurance slip, together with the motor number of the new car. The terms of plaintiff's existing insurance were to be extended to cover the newly purchased automobile, which was to be driven in the United States for 90 days and then shipped to England.

In a subsequent conversation between Warner and Shilson on April 2, 1974, Shilson stated to

Warner that he had "taken care of it". The plaintiff himself never had direct contact with the defendant.

On April 4, 1974, the defendant by its agent Shilson called Richard Warner and stated that the car was not insured. In the meanwhile, the plaintiff had driven his new car to Chicago, where it was stolen while parked outside a friend's flat. The car was later recovered stripped, and the plaintiff received no salvage value.

A jury trial was held in Common Pleas Court in November of 1976 with Lloyds of London as an added party. At the close of plaintiff's proofs, the trial court granted a motion for a directed verdict in favor of Lloyds of London. A similar motion by defendant was denied. The jury returned a verdict in favor of the plaintiff in the amount of $6,200.

In an opinion dated December 29, 1976, the trial judge granted the defendant's motion for judgment notwithstanding the verdict. The judgment *n.o.v.* was appealed by the plaintiff to the Wayne County Circuit Court, which affirmed on May 17, 1978. The plaintiff appeals to this Court by leave granted.

The plaintiff first alleges that the trial court erred in finding that there was insufficient evidence to support the jury's determination that an oral binder of insurance was in existence. We agree.

We first note that a judgment *n.o.v.* on defendant's motion is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the plaintiff. In reviewing a motion for judgment *n.o.v.*, the Court must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If reasonable minds could honestly disagree as to whether

the plaintiff has satisfied his burden of proof on the necessary elements of his cause of action, judgment *n.o.v.* for the defendant is improper. *Sabraw v Michigan Millers Mutual Ins Co,* 87 Mich App 568, 571; 274 NW2d 838 (1978), *Fitzpatrick v Ritzenhein,* 367 Mich 326; 116 NW2d 894 (1962).

The seminal Michigan case on oral insurance binders is *State Automobile Mutual Ins Co v Babcock,* 54 Mich App 194; 220 NW2d 717 (1974), which described a binder as a contract for temporary insurance pending issuance of an insurance policy unless proper notice is given of election to terminate by the insurance company. The Court quoted *Bankers Indemnity Insurance Co v Pinkerton,* 89 F2d 194, 197 (CA 9, 1937), which described the necessary elements to effectuate an oral contract of insurance as follows: (a) subject-matter; (b) the risk; (c) premium; (d) duration of the risk; (e) the amount of insurance. The Court noted that some sources also require as an additional element the identity of the parties.

In *GRP, Ltd v United States Aviation Underwriters, Inc,* 402 Mich 107, 113; 261 NW2d 707 (1978), the Supreme Court noted that the absence of an express agreement upon each of these essential terms was not fatal. The proper test was contained in *Martin v Lincoln Mutual Casualty Co,* 285 Mich 646, 650; 281 NW 390 (1938), where the Court referred to the following statement contained in 1 Cooley's Briefs on Insurance (2d ed), p 535:

"Though it is regarded [as] essential that all the elements of the contract be agreed upon, it is not necessary that this be done expressly. In *Concordia Fire Ins Co v Heffron,* 84 Ill App 610 [1899], it was held that an oral contract of insurance will sustain an action,

though no express agreement is made as to the amount of premium to be paid or the duration of the policy, if the intention of the parties to the contract in these particulars can be gathered from the circumstances of the case."

At trial, the defendant introduced two Tel-Ex messages, exhibit A being from Shilson to the defendant's agent in London, and exhibit B being the agent's response. These Tel-Ex's contained the following information:

*Defendant's Exhibit "A".*
"D. H. Cormack has Lloyds Auto Policy #FP3034488 through Blick Paul & Company Limited, 101 Great Russell Street, London, in Detroit has purchased '73 Lincoln 4-Door, Serial No. 3Y8LA928840, which will drive around U.S. for 90 days and then ship to England. Would appreciate it if you would ask Blick Paul to extend present policy to cover car for same coverage as presently carried."

*Defendant's Exhibit "B",*

"Cormack, your Tel-Ex 4/2, Blick not prepared and unable to extend. We can quote premium, $200 for period with $250 deductible comp., $500 deductible collision, subject to record and value."

The message sent by Shilson indicates that the subject-matter, risk, duration of the risk and the amount of insurance were agreed upon, since it implies that coverage for the new car would be on the same terms as plaintiff's existing policy in England. The only missing element is the premium, but we can infer an implied promise to pay the ordinary amount charged by the defendant for such added coverage. Therefore, under *Babcock* and *GRP, supra,* a valid oral binder for insurance

on plaintiff's Lincoln existed at the time the vehicle was stolen. It is irrelevant that defendant and plaintiff had no direct dealings, since Warner was clearly acting as plaintiff's agent in this matter.

We therefore find that the trial court erred in granting the defendant's motion for judgment *n.o.v.,* and therefore reinstate the jury verdict for $6,200 in favor of the plaintiff.

The plaintiff's second allegation is that the trial court erred in finding that there was no evidence which could support a jury verdict of actionable misrepresentation. At trial, the judge granted defendant's motion for a directed verdict on plaintiff's allegation of fraud.

The elements of fraudulent misrepresentation are enumerated in Prosser, Torts (4th ed), § 105, pp 685-686 as follows:

"1. A false representation made by the defendant. In the ordinary case, this representation must be one of fact.

"2. Knowledge or belief on the part of the defendant that the representation is false—or, what is regarded as equivalent, that he has not a sufficient basis of information to make it. This element often is given the technical name of 'scienter.'

"3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation.

"4. Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.

"5. Damage to the plaintiff, resulting from such reliance." (Footnotes omitted).

This definition is supported by Michigan case law. See, *Graham v Myers,* 333 Mich 111; 52 NW2d 621 (1952), *Michael v Jones,* 333 Mich 476; 53 NW2d 342 (1952), *Kwasny v Driessen,* 42 Mich App 442;

202 NW2d 443 (1972), *Rose v Wertheimer,* 11 Mich App 401; 161 NW2d 406 (1968).

In reviewing a motion for a directed verdict, this Court views the evidence in the light most favorable to the nonmoving party. If the evidence, when viewed in this manner, establishes a prima facie case, then a directed verdict is improper. *Wynn v Cole,* 91 Mich App 517, 524; 284 NW2d 144 (1979). We will therefore proceed to examine each of the elements of fraudulent misrepresentation according to this standard.

In the instant case, Shilson made the representation that "it is taken care of", knowing that Warner was seeking insurance coverage for a third party. According to *Oppenhuizen v Wennersten,* 2 Mich App 288, 294; 139 NW2d 765 (1966), where a party makes false representations to another with the intent or knowledge that they be exhibited or repeated to a third party for the purpose of deceiving him, that third party can maintain a tort action against the party making the false statements for the damages resulting from the fraud.

While Shilson may not have intentionally misled Warner into believing that the insurance coverage had been extended to Mr. Cormack, a jury could find that Shilson had intended his statement to be interpreted in that manner. It is within the jury's province to determine the credibility of witnesses. Thus, there was sufficient evidence to establish the first element, being the making of a false representation.

As to the second element of "scienter" the jury could conclude from the testimony that Shilson had intended his statement to be so interpreted as to imply that the requisite coverage had been arranged and that he knew the statement to be false.

With respect to the third element, being an intention to induce plaintiff to act in reliance on the misrepresentation, the testimony clearly indicates that Shilson intended for Mr. Cormack, through Warner, to rely on his representations. If these representations were in fact false, an intention to induce the plaintiff to rely on them could be found.

As to the fourth element, a justifiable reliance on the part of the plaintiff, a jury could find justifiable reliance on the plaintiff's part based upon a mere oral representation that his English automobile policy with Lloyds of London had been extended to the newly-purchased vehicle.

Finally, it is undisputed that plaintiff acted in reliance on defendant's representation that he was insured, with subsequent damage to him as a result thereof. Thus, we conclude that all of the elements necessary to sustain an action for fraud could have been found by the jury and that the trial court's grant of a directed verdict constituted reversible error.

Reversed, and the jury verdict is reinstated.