**Jack RICK, et al., Plaintiffs,**

v.

**RLC CORPORATION, Defendant.**

**Civ. No. 9–73305.**

United States District Court,
E. D. Michigan, S. D.

Dec. 16, 1981.

Richard L. Steinberg, Detroit, Mich., for plaintiffs.

Thomas F. Myers, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This matter is before the Court on defendant's motion for directed verdict and/or judgment notwithstanding the verdict. Plaintiffs Jack and Betty Rick brought this action claiming that defendant RLC Corporation was negligent in providing management services relating to accident prevention to Jack Rick's employer, Matlack, Inc. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332(a)(1).

On October 6, 1977, Jack Rick was employed by Matlack, Inc. as a truck driver operating out of Matlack's terminal in Woodville, Ohio. Early that morning, he left the Woodville terminal driving a tractor-trailer combination to deliver a load of pebble lime to the Ford Rouge Plant in Dearborn, Michigan. Upon arriving in Dearborn, Jack Rick and the driver of another Matlack vehicle stopped for breakfast at a roadside restaurant. After breakfast, Jack Rick returned to his vehicle, which he had parked in a lot across the street from the restaurant. As he pulled out of the lot and turned right onto the street, the vehicle upset and overturned on its right side, spilling the load of lime pebbles. As a result of the accident, Jack Rick claimed he suffered a herniated disc and nerve root impingement and that he is now totally and permanently disabled. Betty Rick, his wife, claimed she suffered the loss of consortium and companionship as a result of the injury to her husband.

The dump trailer which Jack Rick used to haul the lime pebbles was equipped with an air lift suspension system. This system is attached to the bottom of the trailer and is located approximately nine feet in front of the tandem rear axles of the trailer. It allows the wheels of the air lift suspension axle to be lifted above the pavement when the trailer is empty and to be lowered onto the ground when the trailer is hauling a load.

Jack Rick claimed that the trailer overturned because the air lift suspension sys-

tem failed to remain fastened to the bottom of the trailer. He claimed that when the air lift suspension axle broke loose and fell to the ground, the rear tandem axles rolled over it and overturned the trailer.

At the time of the accident, Matlack was a wholly-owned subsidiary of defendant RLC Corporation, then known as Rollins International. Plaintiffs brought this action claiming that defendant was negligent in providing management services in accident prevention and safety to plaintiff Jack Rick's employer, Matlack. They contend that defendant, by undertaking to provide management services to Matlack, incurred a duty to Jack Rick as an employee of Matlack to exercise reasonable care under common law tort principles expressed in Restatement Torts 2d, § 324A (1965).[1]

At the close of plaintiffs' proofs, defendant moved for a directed verdict on several different grounds. The motion was denied in part, but the Court reserved ruling on whether plaintiffs had produced evidence establishing a duty of defendant to plaintiffs. After defendant produced its proofs, it renewed its motion for a directed verdict. The Court again reserved ruling on the motion and submitted the case to the jury. The jury returned a verdict for plaintiffs. The jury awarded Jack Rick damages in the amount of $469,537.24, but found that thirty percent of the total combined negligence of the parties was attributable to Jack Rick. The jury did not award damages to Betty Rick. Defendant timely filed this motion for directed verdict and/or judgment notwithstanding the verdict under Fed.R.Civ.P. 50.

■ It is the law of this Circuit that in cases in which jurisdiction rests on diversity of citizenship, the court is bound by the standards under state law in determining whether sufficient evidence was presented to withstand a motion for directed verdict or judgment notwithstanding the verdict. *Warkentien v. Vondracek*, 633 F.2d 1, 6 (6th Cir. 1980); *Standard Alliance Ind. v. Black Clawson Co.*, 587 F.2d 813, 823 (6th Cir. 1978); *Garrison v. Jervis B. Webb Co.*, 583 F.2d 258, 261 n.4 (6th Cir. 1978); *Chumbler v. McClure*, 505 F.2d 489 (6th Cir. 1974). *But see Gold v. Nat'l Savings Bank of Albany*, 641 F.2d 430, 434, n. 3 (6th Cir. 1981).

■ Under Michigan law, the standard for granting a judgment n. o. v. is the same as the standard for directing a verdict. *Fitzpatrick v. Ritzenhern*, 367 Mich. 326, 116 N.W.2d 894 (1962); *Farm Bureau Mutual Ins. Co. v. Sears, Roebuck & Co.*, 99 Mich.App. 763, 298 N.W.2d 634 (1980); *Isom v. Farrugia*, 63 Mich.App. 351, 234 N.W.2d 520 (1975); *Hes v. Haviland Products Co.*, 6 Mich.App. 163, 148 N.W.2d 509 (1967). In *Cormack v. American Underwriters Corp.*, 94 Mich.App. 379, 288 N.W.2d 634 (1970), the court stated the standard as follows:

> ... [A] judgment n. o. v. on defendant's motion is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the plaintiff. In reviewing a motion for judgment n. o. v. the Court must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If reasonable minds could honestly disagree as to whether the plaintiff has satisfied his burden of proof on the necessary elements of his cause of action, judgment n. o. v. for the defendant is improper.

---

1. Section 324A of the Restatement Torts 2d provides:

   § 324A. Liability to Third Person for Negligent Performance of Undertaking.

   One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [sic] his undertaking, if

   (a) his failure to exercise reasonable care increases the risk of such harm, or
   (b) he has undertaken to perform a duty owed by the other to the third person, or
   (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

   Although the published text of section 324A uses the word "protect" instead of "perform," this is apparently a typographical error. *See Hill v. United States Fidelity & Guarantee Co.*, 428 F.2d 112, 115 n.2 (5th Cir. 1970).

*Id.* at 382–83. *See also Caldwell v. Fox*, 394 Mich. 401, 231 N.W.2d 46 (1975); *Cunningham v. Garber*, 361 Mich. 90, 104 N.W.2d 746 (1960); *S. C. Gray, Inc. v. Ford Motor Co.*, 92 Mich.App. 789, 286 N.W.2d 34 (1979); *Yoder Co. v. Liberty Mutual Ins. Co.*, 92 Mich.App. 386, 284 N.W.2d 810 (1979); *Dowell v. General Telephone Co.*, 85 Mich.App. 84, 270 N.W.2d 711 (1978); *Beamon v. City of Highland Park*, 85 Mich.App. 242, 271 N.W.2d 187 (1978); *Cody v. Marcel Electric Co.*, 71 Mich.App. 714, 248 N.W.2d 663 (1976); *Taft v. J. L. Hudson Co.*, 37 Mich. App. 692, 195 N.W.2d 296 (1972).

This Court notes that the Sixth Circuit has concluded that the Michigan standard for judgments n. o. v. is legally equivalent to the federal standard. In *Warkentien v. Vondracek*, 633 F.2d 1, 6–7 (6th Cir. 1980), the Sixth Circuit stated:

> ... However, the Michigan standard for directed verdicts appears to be identical to the federal standard, which is referred to as the "reasonable minds" test. Under this standard, a trial court should grant a motion for a directed verdict when, after viewing the evidence in the light most favorable to the non-moving party, the evidence points so strongly in favor of the movant that reasonable minds could not come to a different conclusion as to the appropriate verdict. The issue raised by a motion for a judgment n. o. v. is whether there is sufficient evidence to raise a question of fact for the jury.

The sole issue raised by defendant's motion is whether plaintiffs produced sufficient evidence to establish a duty owed by defendant to plaintiffs. The Michigan Supreme Court recently discussed the proper roles of the trial court and the jury in determining whether one party owes a duty to another in *Smith v. Allendale Mutual Ins. Co.*, 410 Mich. 685, 713–15, 303 N.W.2d 702 (1981). The court stated:

> It is generally agreed that the duty question—"whether upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other"—is to be decided by the court.
>
> . . . . .

It is commonplace to say that a particular defendant owes a duty to a particular plaintiff, but such a statement, although not incorrect, merges two distinct analytical steps. It is for the court to determine, as a matter of law, what characteristics must be present for a relationship to give rise to a duty the breach of which may result in tort liability. It is for the jury to determine whether the facts in evidence establish the elements of that relationship. Thus, the jury decides the question of duty only in the sense that it determines whether the proofs establish the elements of a relationship which the court has already concluded give rise to a duty as a matter of law.

> It is also for the court to determine what evidence is minimally necessary to establish the elements of a relationship on which tort liability may be premised ... (footnotes omitted).

The first step under this analysis is for the court to determine the characteristics which must be present to give rise to a duty, the breach of which may result in liability under Restatement Torts 2d, § 324A. The *Smith* case itself resolves this issue. In the *Smith* case, an employee brought an action against his employer's fire insurance carrier claiming that the carrier's inspections of the employer's factory for fire hazards was an undertaking to provide a safe work place for the employees. The employee argued that these inspections gave rise to a duty on the part of the carrier to the employees under the principles of Restatement Torts 2d § 324A. The Michigan Supreme Court addressed this issue at some length. *Smith v. Allendale Mutual Ins. Co., supra* at 711–719. The court stated:

> One can agree with the general proposition that any person, including an insurer, who assumes to act must act with reasonable care without concluding that the insurers in these cases are subject to liability under the rule of § 324A. It is not enough that the insurer acted. It

must have undertaken to render services to another. Its acts do not constitute such an undertaking unless it agreed or intended to benefit the insured or its employees by the inspections.

.    .    .    .    .

The law does not impose a duty upon an insurer who inspects in the absence of conduct evidencing an agreement or intent to benefit others by the inspection; only in such a case has the insurer acknowledged the propriety of judging the competence of its inspection by a standard which measures its potential effect on others. This concept of acknowledged obligation to another is comprehended by § 324A's threshold description of "[o]ne who undertakes * * * to render services to another," the rule stated in § 324A by its terms does not apply to an actor following a self-serving course of conduct.

While an undertaking which may give rise to liability under the rule of § 324A may be gratuitous as well as contractual, the evidence must show that the actor assumed an obligation or intended to render services for the benefit of another. Evidence demonstrating merely that a benefit was conferred upon another is not sufficient to establish an undertaking which betokens duty.

Persons pursuing their own interests often benefit others in the process. Accordingly, where a plaintiff seeks to prove an undertaking by conduct which benefits another and that conduct is consistent with a primary purpose on the part of the actor to benefit himself, the plaintiff must offer additional evidence to create a jury question whether there was an undertaking to render services and hence a duty to one who might foreseeably be injured by the actor's failure to perform the undertaking with reasonable care. (footnotes omitted).

*Id.* at 716–18. The court concluded that in the absence of evidence that the insurer agreed or intended to provide the insured employer with fire inspection services guarding against reasonably discoverable fire hazards, the negligent failure of an inspection was not actionable by an employee under Restatement Torts 2d, § 324A because the threshold element of duty was lacking.

Defendant argues that RLC Corporation does not have a duty to provide a safe work place for Matlack employees in the absence of a contractual obligation, relying on *Smith v. Allendale Mutual Ins. Co., supra,* and *Gottsleben v. Liberty Mutual Ins. Co.,* C.A. 47447 (Mich.Ct.App. Aug. 7, 1981). Neither case supports the defendant's argument. Although the *Smith* case indicates that a contractual obligation is sufficient to establish an undertaking giving rise to a duty, it clearly does not hold that a contractual obligation is necessary to create the duty. *See Smith v. Allendale Mutual Ins. Co., supra,* at 711–18.

Defendant's reliance on *Gottsleben v. Liberty Mutual Ins. Co., supra,* is also misplaced. In that case, an employee brought suit against her employer's workers' compensation carrier, claiming the insurer was negligent in performing safety inspections of the work place. The Michigan Court of Appeals affirmed the trial court's grant of a directed verdict for the insurer. The court relied on *Smith v. Allendale Mutual Ins. Co., supra,* in holding that an insurer who inspects an employer's premises does not have a duty to the employees in the absence of conduct showing either an agreement or an intent to benefit others by performing the inspections. The court did not indicate that a contractual obligation was necessary to create the duty. It simply found no evidence in the record that the insurer undertook the inspection for any purpose other than to serve its own interests. The issue before this Court, however, is whether there is evidence from which the jury could conclude that RLC Corporation undertook to provide services under an agreement or with the intention of benefitting Matlack or its employees. The existence of such an undertaking establishes a relationship giving rise to a duty. If evidence was produced from which the jury could find such an undertaking, it is for the jury to determine whether the evidence es-

tablishes the elements of that relationship. *Smith v. Allendale Mutual Ins. Co., supra* at 714–15. *Cf. Scott v. City of Detroit*, 107 Mich.App. 194, 309 N.W.2d 201 (1981), on rehearing, 113 Mich.App. 241, 318 N.W.2d 32; application for leave to appeal held in abeyance, 318 N.W.2d 31. Before that issue may be submitted to the jury, however, this Court must determine what evidence is minimally nec- to establish the elements of that relationship. *Smith v. Allendale Mutual Ins. Co., supra* 303 N.W.2d at 715.

Both parties have emphasized the parent-subsidiary relationship between RLC Corporation and Matlack. On the one hand, defendant relies on *Westerman v. Liberty Mutual Ins. Co.*, C.A. 5–71498 (E.D.Mich. Jan. 21, 1977) [2] in arguing that a parent corporation owes no specific duty to an employee of a subsidiary absent an exercise of control. On the other hand, plaintiffs argue that a parent corporation is not entitled to immunity from liability to an employee of its subsidiary solely because of the parent-subsidiary relationship. Plaintiffs rely on the leading case of *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir. 1979), *cert. denied*, 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979), and cases adopting a similar rationale. *See, e.g., Choate v. Landis Tool Co.*, 486 F.Supp. 774 (E.D.Mich.1980); *O'Brien v. Grumman Corp.*, 475 F.Supp. 284 (S.D.N.Y.1979); *Latham v. Techmar, Inc.*, 390 F.Supp. 1031 (E.D.Tenn.1974).

■ Defendant's reliance on *Westerman v. Liberty Mutual Ins. Co., supra*, to resolve the issue of whether defendants owed a duty to plaintiffs in this case is misplaced. The *Westerman* case held only that the mere relationship of parent and subsidiary does not by itself give rise to any duty on the part of the parent to the subsidiary or its employees. This holding, however, does not preclude finding that the parent owes a duty arising out of obligations independent of the parent-subsidiary relationship. The court in the *Westerman* case specifically noted that the plaintiff did not allege that

the parent's duty arose apart from the parent-subsidiary relationship. Plaintiffs in this case do not assert that the relationship between RLC Corporation and Matlack gave rise to a duty on the part of RLC Corporation to Matlack or Jack Rick. Rather, plaintiffs argue that the duty arose out of RLC Corporation's undertaking to provide safety management services to Matlack. Plaintiffs contend that Matlack paid RLC Corporation for management services, which included negotiating package insurance for Matlack, reviewing accident reports, investigating selective accidents, and inspecting the Woodville terminal. Since the *Westerman* case is clearly distinguishable, it does not support defendant's argument that RLC Corporation does not owe a duty to Jack Rick.

■ Plaintiffs' argument based on *Boggs v. Blue Diamond Coal Co., supra*, that a parent corporation is not entitled to immunity from liability to the subsidiary's employees because of the parent-subsidiary relationship does not completely resolve the issue of whether RLC Corporation owed a duty to Jack Rick. The *Boggs* case held that a parent corporation is a separate and distinct entity from a subsidiary and is not a statutory "employee" entitled to immunity under a state workers' compensation law. Since the parent and subsidiary are to be treated as separate entities, the court reasoned that the parent can be liable under common law principles for independent acts of negligence causing injury to the subsidiary's employees. *Boggs v. Blue Diamond Coal Co., supra* at 663. This case, however, does not support the proposition that a parent is liable for injuries caused to a subsidiary's employees in the absence of evidence establishing a duty from the parent to a subsidiary or its employees. The nonexistence of immunity from liability, of course, is not the same as the existence of liability. The *Boggs* case does not relieve the subsidiary's employee of the burden of proving the elements of his negligence case against the parent, including the threshold element of a

---

**2.** In their brief, plaintiffs object to defendant's use of an unreported case to support its position. Since the disposition of this motion does not rely on the case, the Court does not address this issue.

duty owed by the parent to the subsidiary or its employees.

This Court concludes that the sketch of the characteristics which must be present to give rise to a duty drawn by the Michigan Supreme Court in *Smith v. Allendale Mutual Ins. Co., supra,* applies with equal force to an action based on Restatement Torts 2d, § 324A brought by a subsidiary's employee against the parent corporation.

The second step of the duty analysis under the *Smith* case is to determine whether there is sufficient evidence from which the jury could find the elements of a relationship giving rise to a duty. As part of this determination, the court must determine what evidence is minimally necessary to establish the elements of that relationship. *Smith v. Allendale Mutual Ins. Co., supra* at 713–15.

■ To meet the threshold requirement of establishing that RLC Corporation owed a duty to Jack Rick by undertaking to provide safety management services to Matlack, plaintiffs must produce evidence that RLC Corporation undertook to provide the services [3] under an agreement or with the intention of benefitting [4] Matlack, Inc. or its employees. Evidence that benefits were conferred upon Matlack or its employees is not sufficient to establish a duty if RLC Corporation's conduct was consistent with an intention primarily to serve its own purposes. *See Smith v. Allendale Mutual Ins. Co., supra* at 716–18.

Plaintiffs introduced evidence that Matlack paid RLC Corporation for management services rendered by its insurance department. The parties stipulated that Matlack reimbursed RLC Corporation $106,080.00 in 1975, $117,960.00 in 1976, and $117,960.00 in 1977 for the management services provided by RLC Corporation to Matlack. The parties also stipulated that one of the management services provided by RLC Corporation to Matlack in each of these years was to

3. In *Smith v. Allendale Mutual Ins. Co.*, 410 Mich. 685, 717 n.25, 303 N.W.2d 702 (1981), the court discussed the use of the term "services" in Restatement Torts 2d § 324A. The court quoted with approval the definition articulated in *Creameries of America v. Industrial Comm'n.*, 98 Utah 571, 580, 102 P.2d 300, 304 (1940):

> In ordinary usage the term 'services' has a rather broad and general meaning. It includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed. The general definition of 'service' as given in Webster's New International Dictionary is 'performance of labor for the benefit of another;' 'Act or instance of helping, or benefiting.'

4. In *Smith v. Allendale Mutual Ins. Co.*, 410 Mich. 685, 716 n.24, 303 N.W.2d 702, the court indicated that the interpretation of the terms "agreement" or "intention to benefit" should not be restricted to concepts of contract law. The court noted:

> Although in analyzing what constitutes an "undertaking" under § 324A, we use terms with contract law overtones, such as "agreed" or "intended to benefit another", it should be emphasized that we are determining when an "undertaking" will give rise to tort liability, not contractual liability. We deal with the question of when a party's conduct furnishes a proper basis for the law to impose tort liability, not with the question of when a party's conduct can properly be considered as creating a contract implied in fact.
>
> In an action to recover damages for breach of a contract a court is concerned primarily with determining the expectations of the parties and whether those expectations were reasonable. In imposing tort liability, however, a court is only concerned with whether it is appropriate public policy to impose liability for particular conduct; it does not usually consider whether the parties involved believed liability to exist. Thus, the question of what conduct is sufficient to subject a party to tort liability for a negligent undertaking is not solely a matter of what a reasonable person with whom the party deals would understand, but rather one of law in deciding whether liability should be imposed. This is especially so where the one bringing the tort action is not the one who allegedly might reasonably infer the undertaking from the party's conduct.
>
> Although considerations appropriate in contractual context may also be relevant in the tort context, differences in the relevant public policies, extent of liability, the nature of the relationships and the expectations of the persons involved, suggest that the question of what conduct amounts to an undertaking for the negligent performance of which the law will impose tort liability should not be confined by principles of contract law.

receive and review all motor carrier accident reports involving Matlack equipment and personnel.

Plaintiffs introduced the deposition of David A. Wiley, Jr. taken on July 16, 1980. Mr. Wiley is the corporation's claims manager for RLC Corporation. At the deposition, he testified that he purchased package insurance on behalf of Matlack. He also testified he made field visits to Matlack terminals to interview personnel about accidents and that he exchanged information about accident investigations with Matlack personnel. Furthermore, the parties stipulated that prior to the date of the accident, Matlack provided accident investigation information to RLC Corporation and that Mr. Wiley would review all accident investigation reports submitted to RLC Corporation by Matlack.

Plaintiffs also introduced the deposition of Joseph Wise taken on December 23, 1980. Mr. Wise is the former superintendent of maintenance for Matlack at the Woodville terminal. At the deposition, Mr. Wise testified that he observed RLC Corporation personnel at the Woodville terminal. He testified they would periodically inspect the operations of the Matlack terminal, including the maintenance records for individual units. He further testified that the RLC Corporation personnel would generally meet with him and other Matlack personnel after the inspection. He testified that during these meetings, they would discuss maintenance problems that Matlack personnel were experiencing with their equipment, including the air lift suspension systems.

Plaintiffs introduced the deposition of Eric Fausey taken on March 19, 1981. Mr. Fausey was a mechanic for Matlack at the Woodville terminal. He testified that he had seen RLC Corporation personnel at Matlack's Woodville terminal. This testimony corroborated the testimony of Mr. Wise.

Plaintiffs called two expert witnesses who testified that when a parent corporation provides management services to a subsidiary, one of the purposes is to benefit the employees of the subsidiary as well as to benefit the parent. Mr. George Gorbell testified that the purposes are to provide for the subsidiary's employees' safety and to reduce the costs of accidents as reflected in increased insurance rates. Dr. John Grimaldi testified that an undertaking by the parent to provide services would benefit all the "contributor claimants" of the company, including the employer, the employees, and the shareholders. He also testified that the review of accident investigations would have a safety or accident prevention purpose and would tell management where they were failing. Dr. Grimaldi stated his opinions that RLC Corporation was negligent in providing services to Matlack and that it is more likely than not that the accident involving Jack Rick would have been prevented if RLC Corporation had exercised reasonable prudence in providing the services.

■ Viewing the evidence in the light most favorable to the plaintiffs, this Court holds that plaintiffs failed to produce sufficient evidence to establish that RLC Corporation owed a duty to plaintiffs. There is no evidence that RLC Corporation specifically agreed or promised to provide accident prevention services to Matlack. The evidence showed that Matlack paid RLC Corporation to provide services which included negotiating package insurance for Matlack, reviewing accident reports, and investigating selective accidents. RLC Corporation's conduct is equally consistent with the view the RLC Corporation acted to reduce its insurance costs by gathering and providing centralized information about itself and its subsidiaries to its insurance companies and the regulatory agencies. The evidence also showed that officers from RLC Corporation would periodically visit and inspect the Woodville terminal. This conduct is consistent with the view that RLC Corporation was interested in the operations of Matlack from the perspective of a shareholder of Matlack, as well as the view that RLC Corporation acted to gather and provide information about itself and its subsidiaries. The testimony of the experts showed that RLC Corporation's conduct was consistent

with the purpose of accident prevention. Their testimony, however, did not show that the purpose of RLC Corporation's conduct was accident prevention or that RLC Corporation's conduct was not equally consistent with a primary purpose to benefit itself.

Although Matlack may have benefitted from the services, evidence demonstrating merely that RLC Corporation's conduct benefitted Matlack is not sufficient to establish an undertaking giving rise to a duty in the absence of an agreement or intention to benefit Matlack or its employees. In *Smith v. Allendale Mutual Ins. Co., supra* at 717–18, the court stated:

> ... Evidence demonstrating merely that a benefit was conferred upon another is not sufficient to establish an undertaking which betokens duty. Persons pursuing their own interests often benefit others in the process. Accordingly, where a plaintiff seeks to prove an undertaking by conduct which benefits another and that conduct is consistent with a primary purpose on the part of the actor to benefit himself, *the plaintiff must offer additional evidence to create a jury question whether there was an undertaking to render services and hence a duty* to one who might foreseeably be injured by the actor's failure to perform the undertaking with reasonable care. (emphasis added).

Plaintiffs failed to produce evidence that RLC Corporation agreed or intended to provide the benefit of services more comprehensive than it chose to provide for its own benefit, or that Matlack expected it to do so. There is no evidence that RLC Corporation represented that its conduct was designed to relieve Matlack of the responsibility for detecting safety hazards in the equipment and instituting remedial measures, or that Matlack understood that to be the purpose of RLC Corporation's conduct. Neither was there evidence that Matlack depended upon RLC Corporation to provide comprehensive safety services. There is no indication that RLC Corporation agreed or intended to negotiate package insurance, review accident reports, investigate accidents and inspect the Woodville terminal for other than its own purposes.

The opinions of Dr. Grimaldi that RLC Corporation negligently caused Jack Rick's accident are addressed to the issues of the breach of duty and proximate cause. The opinions do not establish that RLC Corporation owed a duty to plaintiffs, but rather were based on an assumption that the duty existed. These opinions do not constitute sufficient evidence to create a jury question on whether RLC Corporation undertook to provide services to Matlack under an agreement or with the intention of benefitting Matlack or its employees.

In summary, the evidence shows that Matlack paid RLC Corporation to provide some services to Matlack. There is no evidence, however, that RLC Corporation agreed or promised to provide these services to alert Matlack or its employees to safety hazards in the use or maintenance of their equipment. Absent evidence of such a specific undertaking, there must be evidence other than the mere rendering of services to indicate that RLC Corporation undertook to provide the services for Matlack's benefit before the claim may be properly submitted to the jury. *Smith v. Allendale Mutual Ins. Co., supra* at 718–19. The Court concludes that the evidence, taken in the light most favorable to plaintiffs, failed to create a jury question on whether the scope and nature of the relationship gave rise to an undertaking creating a duty on the part of RLC Corporation. The Court finds that plaintiffs failed to produce evidence from which the jury could conclude that RLC Corporation undertook to provide services under an agreement or with the intention of benefitting Matlack or its employees. Absent evidence supporting such a conclusion, the threshold element of duty is lacking.

Therefore, defendant's motion for directed verdict or judgment n.o.v. will be granted. An appropriate order shall be submitted.