829 F.2d 36
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Brian R. SANDERS, Plaintiff-Appellant,
v.
MAPCO, INC., a Corporation, Defendant-Appellee.
 No. 87-2528
 United States Court of Appeals, Fourth Circuit.
 Argued July 8, 1987.
Decided September 2, 1987.
 
 Joseph Andrew Yablonski (John F. Colwell; Yablonski, Both & Edelman, on brief), for appellant.
 Michael Esher Yaggy (Carl F. Ameringer; Michael S. Barranco, on brief), for appellee.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 Brian Sanders appeals from the district court's order granting defendant, Mapco, Inc.'s ('Mapco') motion for summary judgment. This negligence action, based on diversity of citizenship, arose from injuries Sanders received in an accident at the Mettiki Coal Corporation ('Mettiki)', a wholly-owned subsidiary of Mapco. We affirm.
 
 I.
 
 2
 Mapco is a Tulsa, Oklahoma, based holding company which conducts its operations through wholly-owned subsidiaries. At the time of the accident, its subsidiaries included Mettiki, a mining complex located in western Maryland, and Mapco Coals, Inc. ('Mapco Coals').[1] Mapco assisted these subsidiaries in handling financial and administrative matters relating to certain specific operations. These services involved the areas of financial and property accounting, taxation, insurance, administration of employee benefit plans and legal assistance. Mapco also provided Mettiki with various pre-printed form documents, many of which were inscribed with the Mapco logo. These included: Mapco, Inc. Applications for Employment, Mapco, Inc. Physical Exam Reports and Mapco, Inc. payroll account checks. As a financial service to Mettiki, Mapco provided check disbursement as well as payment of penalties, fines and other costs assessed against Mettiki by the Mine Safety and Health Administration ('MSHA').
 
 
 3
 Sanders began working for Mettiki in late 1979 as a general laborer. At the time of the accident, he had been promoted to the position of locomotive operator, an assignment which involved moving rail cars to a 'loadout area' in order to load them with coal. Coal was delivered to the loadout area by way of a temporary conveyor belt known as a 'pony belt.' As a part of his regular duties, Sanders was required to keep the pony belt operating properly.
 
 
 4
 When Sanders reported to work on January 13, 1982, the temperature was near freezing, and he had been told that the prior shift had encountered difficulties with the pony belt breaking down. At about 7:30 that evening, he checked the beltline and found that it was slipping. Sanders was instructed by his immediate supervisor, Mike Burch, to apply belt dressing, a sticky substance used to increase the friction on belts. As he was applying the dressing, Sanders' hand was caught between the roller and the belt, amputating his right arm just below the shoulder.[2] Doctors were initially able to reattach the arm. Unfortunately, after several unsuccessful operations and the amputation of the tips of three fingers, it has been recommended that Sanders' arm be amputated and a prosthesis be installed.
 
 
 5
 In the fall of 1981, an MSHA inspector had informed David Kutchman, the Mettiki Safety Director, that federal mine regulations required that guards be installed on the pony belt. No citations were issued, however, because the beltline was not in operation at that time. Despite the warnings, the pony belt was placed back in operation without the installation of guards.
 
 
 6
 Kutchman had been hired as an hourly employee at Mettiki in 1977 by George Kutchman, who was also his father and Mettiki's General Superintendent. David Kutchman was promoted to Safety Director at Mettiki in 1981 at the suggestion of his father and upon the approval of Bruce C. Wilson and Norris Brooks, each of whom were Mettiki officers.[3] Wilson also held the title of Senior Vice-President at Mapco.
 
 
 7
 Sanders claimed and collected workmen's compensation benefits from Mettiki for the injuries he sustained in the accident. On January 11, 1983, he filed this action in the district court, alleging that the accident was caused by Mapco's negligence in failing to provide a safe workplace. The district court denied Mapco's motion to dismiss, holding that the theories and allegations presented by Sanders were cognizable under Maryland case law.
 
 
 8
 In Maryland, an employer owes a nondelegable duty to provide a safe workplace for its employees. Athas v. Hill, 300 Md. 133, 476 A.2d 710 (1984); Md. Code Annot. art 89, Sec. 32(a)(1) (1985). In this case the employer, Mettiki, was immune from suit under the Maryland Workmen's Compensation statute. Baltimore Transit Co. v. State, 183 Md. 674, 677, 39 A.2d 858, 859 (1944). A third party who is independently negligent or who affirmatively undertakes the safety responsibilities of an employer, however, is not immune from suit. Md. Code Annot., art 101 Sec. 58 (1985). Sanders alleged that Mapco, by its conduct, affirmatively undertook the safety responsibilities at Mettiki and was negligent in promoting David Kutchman, an inexperienced employee, to Safety Director. Upon completion of discovery, the district court entered summary judgment in favor of Mapco, holding that Sanders had failed to produce sufficient evidence to establish that Mapco owed a duty to Sanders.
 
 
 9
 This appeal followed.
 
 II.
 
 10
 On appeal, Sanders contends that the district court committed clear error in granting summary judgment in favor of Mapco when there were multiple disputed issues of material fact. Specifically, he argues that the court erred in finding: (1) that George Kutchman and his son David were not Mapco employees, (2) that Norris Brooks and Bruce C. Wilson were not acting on behalf of Mapco when they approved David's promotion to Mettiki Safety Director, and (3) that Mapco did not affirmatively undertake the safety responsibilities at Mettiki. We disagree.
 
 
 11
 To avoid summary judgment, Sanders was required 'to make a showing sufficient to establish the existence' of a duty owed by Mapco to Sanders. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986). Sanders has simply failed to sustain his burden of proof as to this essential element to his case.
 
 
 12
 The district court correctly observed that '[t]he only real question . . . is whether David Kutchman, while failing to perform his duties as Safety Director, was an agent or servant of Mapco.' Sanders argues that George Kutchman, acting as Mapco's agent, hired his son David, who was subsequently promoted by his father to the position of Safety Director of Mettiki, with the express approval and authorization of Wilson and Brooks. Sanders argues that since George Kutchman, Wilson, and Brooks were employees and agents of Mapco when they approved the promotion of David to Mettiki Safety Director, then it necessarily follows that David Kutchman must also have been an agent of Mapco.[4] Sanders' argument is unpersuasive.
 
 
 13
 Sanders ignores the fact that David was initially hired as an hourly employee of Mettiki by his father, who was functioning as Mettiki's General Superintendent. While it is undisputed that George Kutchman may have worn two hats at times, one as a spokesman for Mapco and another as a Mettiki supervisor, Sanders offered no proof that the elder Kutchman was acting on behalf of Mapco when he hired his son. In addition, the overwhelming evidence demonstrates that David Kutchman had no connection with Mapco, whatsoever. At the time of Sanders' accident, David Kutchman held the title of Mettiki Safety Director. His salary was charged to Mettiki's account, and he reported to Mettiki supervisory personnel. His job performance was evaluated by Mettiki officials. There is nothing to suggest that David Kutchman ever undertook any duties at Mettiki on behalf of Mapco.
 
 
 14
 Nor has Sanders produced sufficient evidence to show that Wilson and Brooks were acting on behalf of Mapco when they approved the promotion of David Kutchman. Both Brooks and Wilson were elected to their positions at Mettiki by the Mettiki Board of Directors. Although Wilson may have also held a position with Mapco, it is not an uncommon practice for officers of a parent company to occupy dual roles with respect to their subsidiaries. Absent any evidence to the contrary, we cannot say that the district court erred in finding that Brooks and Wilson were acting purely as Mettiki employees in authorizing David Kutchman's promotion to Safety Director.
 
 
 15
 Finally, we cannot agree that, by providing certain financial and administrative services for Mettiki, Mapco affirmatively assumed the safety responsibilities at Mettiki. As the district court below noted in its opinion, '[C]ourts have held that a parent company can undertake some of the administrative functions for a subsidiary without undertaking others, especially when the parent is acting out of selfish motivation.' See Muniz v. National Can Corp., 737 F.2d 145 at 148 (1st Cir. 1984); Rich v. RLC Corp., 535 F. Supp. 39 (E. D. Mich. 1981). In the instant case, the evidence is clear that Mapco undertook to provide certain administrative services for Mettiki. For the most part, however, the cost of these services was properly charged to Mettiki's account. Significantly, there is no evidence that Mapco intended to perform these functions for Mettiki's benefit rather than its own. Any benefits Mettiki received from these services was purely incidental.
 
 
 16
 In summary, we hold that the district court committed no error in finding that Sanders failed to produce sufficient evidence to establish that Mapco owed a duty to Sanders. Absent a showing of this duty towards Sanders, Mapco cannot be found liable for any breach which led to Sanders' injuries.
 
 III.
 
 17
 For the foregoing reasons, the order of the district court is affirmed.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 In 1983, Mettiki became a wholly-owned subsidiary of Mapco Coals which, in turn, is owned by Mapco
 
 
 [2]
 After the accident, an MSHA inspector cited Mettiki for failing to install a guard on the beltline. Federal investigations followed in order to determine whether the violations were deliberate
 
 
 [3]
 Wilson was Senior Vice-President; Brooks was Vice-President in Charge of Operations
 
 
 [4]
 Although Wilson was a Vice-President of Mapco, there was no evidence to support Sanders' assertion that Brooks was ever an officer of the parent company