849 F.2d 608
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Dale C. ALVERSON, M.D., and Physicians Insurance Co.,
Plaintiffs-Appellees (87- 1607),
Plaintiffs-Appellants (87-1615),
v.
Edward C. ROOD, Defendant-Appellant (87-1607),
Edward C. ROOD and Richard Gunderman, M.D.,
Defendants-Appellees (87-1615).
 
 Nos. 87-1607, 87-1615.
 United States Court of Appeals, Sixth Circuit.
 June 21, 1988.
 Before BOYCE F. MARTIN, Jr., MILBURN and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 In this action for fraud and conspiracy to defraud, Dr. Dale C. Alverson and the Physicians Insurance Company of Michigan appeal the district court's decision to grant judgment notwithstanding the verdict in favor of Dr. Richard Gunderman with respect to both the fraud and conspiracy claims and in favor of Edward C. Rood with respect to the conspiracy claim, and Rood appeals the court's refusal to upset the jury's finding that he committed fraud. We affirm in part and reverse in part.
 
 
 2
 This case stems from an earlier lawsuit in which Rood, a Florida attorney, filed a medical malpractice action against Dr. Alverson, a Michigan neonatologist. In that suit, filed on behalf of Cathy and Ted Nance, Rood alleged that Dr. Alverson had negligently treated the Nances' infant daughter, Chelsey. Almost a year before this action was filed, Rood met with Dr. Gunderman, a Tampa physician specializing in pediatric neurology who had examined Chelsey and accurately diagnosed her condition. At their initial meeting on August 20, 1980, Dr. Gunderman told Rood that the Nances did not have a case against Dr. Alverson, and Dr. Gunderman placed a memorandum in his files regarding that meeting which stated, "Certainly I do not feel there is any negligence on Dr. Alverson's part." Despite this opinion, less than a year later, when Rood filed suit against Dr. Alverson, Dr. Gunderman agreed to testify as an expert witness for the Nances.
 
 
 3
 In the late stages of this litigation, Dr. Alverson's attorneys discovered that they were being misled by Rood and Dr. Gunderman. Rood had provided allegedly complete copies of Dr. Gunderman's files on the Nance child, yet Dr. Alverson's lawyers did not obtain Dr. Gunderman's exculpatory memorandum until they were notified by attorneys defending another related lawsuit filed by Rood on behalf of the Nances that such evidence existed. At that time, Dr. Alverson's lawyers also discovered a written telephone message which indicated that Rood had instructed Dr. Gunderman to destroy other correspondence in his files. When confronted with these damaging discoveries, Dr. Gunderman retreated, and, shortly thereafter, the Nances agreed to dismiss Dr. Alverson from the suit.
 
 
 4
 On February 28, 1984, Dr. Alverson and his medical malpractice insurer, Physicians Insurance, filed this action against Rood and Dr. Gunderman. The original complaint alleged fraud, professional negligence, conspiracy, defamation, abuse of process, and malicious prosecution. The district court, however, dismissed all of the counts except for the allegations of conspiracy to defraud and fraud. After a ten-day trial, the jury found both Rood and Dr. Gunderman liable on both the remaining counts. The jury awarded Dr. Alverson $150,000, and it awarded $46,453 to Physicians Insurance.
 
 
 5
 On May 27, 1987, the district court granted Dr. Gunderman's motion for judgment notwithstanding the verdict. The court concluded that there was not sufficient evidence for the jury to find Dr. Gunderman liable for either fraud or conspiracy. Because one cannot commit conspiracy alone, the court also granted Rood's motion for judgment notwithstanding the verdict with respect to the conspiracy claim. The court, though, upheld the jury's determination that Rood had committed fraud.
 
 
 6
 In this consolidated appeal, the parties do not dispute the relevant legal standards. Rather, they contest whether or not the evidence in the record satisfies those standards. Although we believe the district court properly denied Rood's motion for judgment notwithstanding the verdict with respect to the fraud claim, we believe that the court should not have upset the other verdicts returned by the jury.
 
 
 7
 A motion for judgment notwithstanding the verdict is governed by Fed.R.Civ.P. 50. In diversity cases in this circuit, however, a court must apply the appropriate state's standard to determine whether the evidence is legally sufficient to support a jury verdict. Moran v. Johns-Manville Sales, Corp., 691 F.2d 811, 813 (6th Cir.1982). Under Michigan law,
 
 
 8
 [a] judgment N.O.V. on defendant's motion is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the plaintiff. In reviewing a motion for judgment N.O.V., the Court must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If reasonable minds could honestly disagree as to whether the plaintiff has satisfied his burden of proof on the necessary elements of his cause of action, judgment N.O.V. for the defendant is improper.
 
 
 9
 Cormack v. American Underwriters Corp., 94 Mich.App. 379, 382-83, 288 N.W.2d 634 (1979).
 
 
 10
 In order to establish actionable fraud, the plaintiff must prove by clear and convincing evidence: 1) that the defendant made a material misrepresentation; 2) that such representation was false; 3) that, when the defendant made the representation, the defendant knew it was false or made it recklessly without knowledge of its truth; 4) that the defendant intended that the plaintiff rely on the misrepresentation; 5) that the plaintiff did, in fact, rely on the defendant's misrepresentation; and 6) that such reliance caused the injury for which the plaintiff seeks compensation. Dix v. American Bankers Life, 141 Mich.App. 650, 658-59, 367 N.W.2d 896 (1985) aff'd in part, rev'd in part, 429 Mich. 410, 415 N.W.2d 206 (1987). Under Michigan law, moreover, concealment of material facts may constitute actionable fraud. Walker v. Walker, 330 Mich. 332, 335, 47 N.W.2d 633 (1951). "In Michigan, even without a fiduciary relationship, a party is under a duty to use diligence in making a complete disclosure of facts where partial disclosure may convey false impressions and mislead the plaintiff." Strand v. Librascope, Inc., 197 F.Supp. 743, 753 (E.D.Mich.1961).
 
 
 11
 Rood argues that there was insufficient evidence concerning two key elements of the fraud claim. He contends that Dr. Alverson and Physicians Insurance failed to establish that he, Rood, made a material misrepresentation and that they, Dr. Alverson and Physicians Insurance, relied on it. Rood also claims that there is insufficient evidence in the record to support the amount of damages awarded by the jury.
 
 
 12
 In this case, the alleged material misrepresentation was Rood's failure to disclose that Dr. Gunderman had previously written a memorandum which exonerated Dr. Alverson. Rood, however, characterizes his misconduct as merely a failure to reveal the fact that Dr. Gunderman had changed his opinion regarding the standard of care provided by Dr. Alverson. The jury, though, was presented with proof of a course of conduct more consistent with the characterization of Rood's behavior as fraudulent than with the innocuous story told by Rood himself. For example, Dr. Alverson and Physicians Insurance produced documentary evidence that Rood had given false answers to interrogatories, that Rood had attempted to hide the existence of related cases from respective counsel, and that Rood had attempted to purge Dr. Gunderman's file of compromising communications. Accordingly, a reasonable juror could find that Rood made a material misrepresentation.
 
 
 13
 A reasonable juror could also find that Dr. Alverson and Physicians Insurance detrimentally relied on Rood's misrepresentation. Rood argues that, because the district court concluded as a matter of law that the lawsuit was not wrongly filed and not spurious, Dr. Alverson and Physicians Insurance could not have relied to their detriment on Rood's failure to disclose the exculpatory memorandum. As the district court recognized, however, Dr. Alverson and Physicians Insurance based their defense on the information available to them. Undoubtedly, had they not been denied the benefits of Dr. Gunderman's earlier memorandum, they would have handled the malpractice suit in a very different way.
 
 
 14
 We also believe the damages awarded were reasonable under the circumstances. Under Michigan law, a plaintiff can recover damages for mental distress. See e.g. Smith v. Teledyne Industries, Inc., 578 F.Supp. 353 (E.D.Mich.1984). Here, Dr. Alverson testified that the protracted malpractice litigation caused severe mental suffering and anxiety. In light of the grievous fraud perpetrated on him, such testimony is sufficient to support an award of $150,000. With respect to the $46,453 in defense costs awarded to Physicians Insurance, we note that Rood possessed the exculpatory memorandum prior to filing the suit and that, when that memorandum was uncovered, Dr. Alverson was almost immediately dismissed from the suit. Therefore, as a result of Rood's fraud, Physicians Insurance financed Dr. Alverson's defense for over two years. Accordingly, the district court correctly ruled that it was proper for the jury to consider the total costs incurred by Physicians Insurance in defending the malpractice suit.
 
 
 15
 We do not believe, however, that it was correct for the court to absolve Dr. Gunderman of all legal liability in this matter. Although the court felt that Dr. Gunderman must bear some moral responsibility for the damage done here, the court concluded that "[t]he commission of fraud by Dr. Gunderman [could not] be conclusively inferred from the evidence." The court recognized that the facts suggested that Dr. Gunderman was sufficiently aware of the relevant facts to permit one to conclude that he had committed fraud. In the district court's opinion, though, the facts merely established that Dr. Gunderman was a tool through which Rood was able to perpetrate his scheme upon Dr. Alverson and Physicians Insurance.
 
 
 16
 In determining whether to grant a motion for judgment notwithstanding the verdict, however, a court may not upset the jury's verdict in this fashion. A district court is not free to reweigh the evidence and set aside a jury verdict merely because the jury could have drawn different inferences or because the court feels that another result is more reasonable. T.C.P. Industries, Inc., v. Uniroyal, Inc., 661 F.2d 542, 546 (6th Cir.1981) (citing Tenant v. Peoria & P.U. Ry. Co., 321 U.S. 29, reh'g denied, 321 U.S. 802 (1944)). Moreover, the district court was obligated to give Dr. Alverson and Physicians Insurance the benefit of every reasonable inference that could be drawn from the evidence.
 
 
 17
 After reviewing the evidence in the record, we believe that a reasonable juror could conclude that Dr. Gunderman was more than merely an unwitting accomplice. Someone with his professional experience and educational background must have known that it was wrong, not just ethically but also legally, to conceal a crucial piece of evidence. And Dr. Gunderman's reaction when confronted with this memorandum bolsters this inference. Therefore, it was not unreasonable for the jury to conclude that Dr. Gunderman committed fraud by failing to reveal his earlier written opinion and that he was an active participant in Rood's overall scheme to defraud Dr. Alverson and Physicians Insurance.
 
 
 18
 Accordingly, we affirm the district court's decision to deny Rood's motion for judgment notwithstanding the verdict on the fraud claim, and we reverse the district court's decision to grant Rood and Dr. Gunderman's motion on the conspiracy claim and Dr. Gunderman's motion on the fraud claim.