THE PEOPLE'S SAVINGS BANK v. THADDEUS GALVIN
ET AL.

*Mortgage foreclosure—Settlement—Evidence.*

This case involves the question of the alleged settlement of the debts secured by the mortgages sought to be foreclosed. On a review of the testimony it is held that the settlement is not shown. Only questions of fact are involved.

Appeal from Wayne. (Reilly, J.) Argued May 2, 1890. Decided May 16, 1890.

Bill to foreclose two mortgages. Defendants appeal. Affirmed. The facts are stated in the opinion.

*James T. Keena,* for complainant.

*Henry M. Cheever*, for defendants.

MORSE, J. The bill in this case was filed to foreclose two certain mortgages,—one dated August 2, 1883, to secure a bond of $1,100, and the other, dated November 30, 1885, given to secure a bond of $700. These mortgages were executed by the defendant Thaddeus Galvin to the complainant. It was claimed by defendants that the debts secured by these mortgages had been settled and paid December 15, 1888, which settlement and payment is evidenced by the following instrument:

"The Galvin Bros. (Thaddeus Galvin, John Galvin), on the one part, and the Galvin Brass & Iron Works, The People's Savings Bank, and M. W. O'Brien, severally, on the other part, have settled in full all matters and differences between them, and all claims and counter-claims and demands they may have jointly or severally against each other, of every kind and description, the same as if such claims and demands were herein particularly described and mentioned. It is understood that certain patterns belonging to Galvin Bros.—all that were not paid for by the Galvin Brass & Iron Works to Galvin Bros.—will be delivered to Galvin Bros. on demand.
"M. W. O'BRIEN.
"THE PEOPLE'S SAVINGS BANK,
"By M. W. O'Brien, Prest.
"THE GALVIN BRASS & IRON WORKS,
"F. F. Palms, Prest."

This suit was commenced March 2, 1889. The circuit court for the county of Wayne, in chancery, in which the suit was heard, entered a decree in favor of the complainant for $1,889.98. The defendants appeal.

Upon a careful reading of the testimony, we are satisfied that the decree is right. There is no testimony that, during the negotiations leading up to this settlement, anything was said about these bonds and mortgages, or that they were considered or mentioned at the time of the settlement, and Elliott G. Stevenson, who conducted the settlement on the part of the Galvins, testifies that

nothing was said to him by the Galvins, or any one else, about these mortgages; that he knew nothing about them, and did not understand that they were embraced in the settlement.

Stevenson made the following proposition of settlement to O'Brien on behalf of the Galvins:

"There remains unpaid of stock delivered to Mr. Keena_ $5,000 00
The stock collateral to note will bring, at 60 cents_____ 3,000 00

                                                            $8,000 00
Required to pay note, besides interest_____  5,000 00

  Bal. due Galvin in sale of stock_____  $3,000 00
  "Will take $3,500, less interest, on $5,000 note up to time stock transactions took place, and release all claims against Mr. O'Brien, or Galvin Brass & Iron Works."

This, Mr. Keena, acting for. O'Brien and the People's Savings Bank, accepted; and this was the basis, and the only basis, of the settlement. The controversy between the parties, and which was settled by this agreement, was entirely outside of these bonds and mortgages, and grew out of the following transaction:

In 1884 the business of Galvin Bros., carried on by them in Detroit, was incorporated under the name of the Galvin Brass & Iron Works. They interested Mr. O'Brien, who was president of the People's Savings Bank, in the effort to organize the corporation, and for his services gave him their check on the Savings Bank for $3,000, dated April 20, 1885. April 9, same year, Galvin Bros. had discounted their note at the bank for $5,000, the proceeds of which went to their credit. Differences arose between Galvin Bros., Mr. O'Brien, and the Galvin Brass & Iron Works. Finally Galvin Bros. sold all their stock in the corporation at 60 cents on the dollar. In August, 1888, Col. Atkinson, acting for the Galvin Bros., delivered to Mr. Keena, attorney for the other parties, stock of the par value of $43,000, amounting at 60 cents

on the dollar, to $25,800. Keena gave his checks in payment, aggregating $20,800, retaining in his hands the balance to provide for the payment of the $5,000 note held by the bank. The bank held, collateral to this note, stock of the Galvin Brass & Iron Works of the par value of $5,000.

Matters remained in this shape for a while, until Mr. Stevenson, employed by the Galvins, commenced suit against Mr. O'Brien, personally, for the $5,000 held back by Keena, and also for the amount of the $3,000 check. Negotiations then again commenced for settlement, culminating in the offer of Mr. Stevenson and the acceptance by Mr. Keena, acting for O'Brien, and the agreement of December 15, 1888, given above. Mr. Stevenson states that the offer of Galvin Bros., as made by him, showed the indebtedness to them as follows:

| | |
|---|---:|
| Stock value on sale retained by Keena | $5,000 00 |
| Value of stock held by bank collateral to note | 3,000 00 |
| To pay attorney expenses | 500 00 |
| | $8,500 00 |

| | |
|---|---:|
| Received from bank-note, and interest paid on same | $5,205 83 |
| Keena's check | 3,294 17 |
| | $8,500 00 |

And that the Galvins authorized, and were satisfied with, such settlement. Afterwards, in January, 1889, Thaddeus Galvin came to Stevenson, as the latter testifies, with a notice from the bank that interest was due on these mortgages, and said to Stevenson that he understood that these mortgages were settled, with the other matter, December 15, 1888. Stevenson told him he did not understand it so. Galvin replied that he was going to insist upon the mortgages being released, to which Stevenson replied that in such case he had better consult

other counsel, because of Stevenson's connection with the settlement, and his understanding of it.

A significant fact in regard to this settlement is that, while Thaddeus Galvin swears that he understood the mortgages were settled by this paper writing of December 15, 1888, he did not receive the bonds and mortgages, or ask for them or their discharge, while the note of $5,000 was delivered to him. The testimony of Mr. Stevenson is fully corroborated by that of Mr. Keena, who acted for O'Brien and the bank in bringing about the settlement, and who was one of the principal actors in it. Thaddeus Galvin testifies that the $3,000 check to O'Brien was given to him as a bonus for controlling the stock of the Galvin Brass & Iron Works, in the interest of the Galvin Bros., which agreement he did not fulfill, and then promised to pay it back to them, and that they claimed this $3,000 of O'Brien, making their claim in all $11,000 instead of $8,000, and that such claim of $3,000 was released in consideration of the release of these mortgages in suit; but his testimony is not supported by the facts in the case, as we find them.

The decree of the court below will be affirmed, with costs.

The other Justices concurred.