THADDEUS GALVIN AND JOHN GALVIN v. MICHAEL W. O'BRIEN.

| 96 | 483 |
| s56NW | 85 |
| 131 | 552 |

[See 81 Mich. 11.]

*Contract—Rescission.*

A party seeking to rescind an agreement on the ground of fraud or mistake must first place the other party *in statu quo.*

Error to Wayne. (Hosmer, J.) Argued June 28, 1893. Decided July 25, 1893.

*Assumpsit.* Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*Henry M. Cheever,* for appellants, contended:

1. The general doctrine that parol evidence is inadmissible to vary the terms of a written contract is not questioned, nor the doctrine that all previous parol agreements are merged in a written contract; but it is equally well settled that a receipt is only *prima facie* evidence, and may be impeached. This, however, we did not seek to do, but sought to show that there was a misrepresentation, under which the agreement was signed by the plaintiffs, and this is always admissible; and fraud or mistake will not only vary, but may nullify, a written instrument.

*Keena & Lightner,* for defendant.

MONTGOMERY, J. In 1885, plaintiffs held about $40,000 of the capital stock of the Galvin Brass & Iron Works. The defendant was also a stockholder and director in the corporation. An agreement was entered into between the plaintiffs and defendant, by the terms of which defendant agreed, for a consideration of $3,000, to secure for plaintiffs the majority of the stock, so that at stockholders' meetings the plaintiffs could control the organization of the board, the election of officers, etc. The plaintiffs gave

their check to defendant for $3,000, which was paid, and a memorandum was placed on the back of the check by the plaintiffs, specifying the agreement in accordance with which the check was given, and signed by O'Brien, the defendant. It is claimed that the defendant subsequently promised to repay the $3,000. Later the People's Savings Bank, which was also interested in the corporation, and held two mortgages against the plaintiffs, amounting to some $1,900, was desirous of obtaining control of the stock of the corporation. The plaintiffs employed Col. Atkinson and Mr. Stevenson to negotiate a settlement with the bank and defendant, O'Brien. A settlement was effected, and an agreement entered into in the following language:

" The Galvin Bros. (Thaddeus Galvin, John Galvin), on the one part, and the Galvin Brass & Iron Works, the People's Savings Bank, and M. W. O'Brien, severally, on the other part, have settled in full all matters and differences between them, and all claims and counter-claims and demands they may have jointly or severally against each other, of every kind and description, the same as if such claims and demands were herein particularly described and mentioned. It is understood that certain patterns belonging to Galvin Bros.   *   *   *   will be delivered to Galvin Bros. on demand."

This is dated December 15, 1888, and signed by all the parties. Subsequently the bank sought to enforce collection of the two mortgages held by it against the plaintiffs, and the plaintiffs defended against these foreclosure proceedings, claiming that the mortgages were included in this settlement; but this claim was determined adversely to them. See 81 Mich. 11. They then brought this suit against defendant, O'Brien, to recover the amount of the $3,000 paid to him, claiming that the receipt or agreement was signed under a mistake of fact on their part.

The circuit judge directed a verdict for the defendant. No error was committed in the giving of this instruction. The plaintiffs' testimony offered in this case tended to

show, not that the claim upon which they now bring suit was not included in the settlement, but they seek to avoid the settlement as a whole because of the alleged misunderstanding on their part as to whether the mortgages held by the bank were included. No offer has been made to rescind this agreement. The plaintiffs have retained the benefit of it, and it does not appear but that the defendant understood the terms of the settlement. Mr. Stevenson, who negotiated the settlement on behalf of the plaintiffs, testified:

"There was no question at all but what Mr. Galvin and I thoroughly understood that that $3,000 claim was settled and embraced in the settlement. I do not say that Mr. Galvin understood the mortgages were included, but do say that Mr. Galvin knew that the $3,000 claim was settled."

Mr. Galvin testified, in effect, that Mr. Stevenson had full authority to effect a settlement of the matters in controversy. It is very clear from this testimony that the $3,000 item was in fact included in the settlement If the plaintiffs could under any circumstances avoid the agreement,—which we do not decide,—certainly it was incumbent upon them, before bringing suit upon the original obligation, to place the parties *in statu quo*. *Pangborn v. Insurance Co.*, 67 Mich. 683; *Crippen v. Hope*, 38 Id. 344; *Jewett v. Petit*, 4 Id. 508; *Walsh v. Sisson*, 49 Id. 423; *Headley v. Hackley*, 50 Id. 43.

To admit plaintiffs' contention here would result in making a contract entirely different from the one which they claim to have entered into, and much more to their advantage. It is their contention that this $3,000 claim was settled, and was offset against $1,900 of mortgages held by the bank. After discovery, as they say, that the $1,900 item was not included in the settlement, they seek to recover the full $3,000 from this defendant, profiting by their alleged mistake to the amount of $1,100, and this without

any offer to rescind the agreement.    No illustration could better demonstrate the propriety of the rule which requires of a party seeking to rescind an agreement, on the ground of fraud or mistake, that he first place the other party to the contract *in statu quo.*

Judgment will be affirmed, with costs.

HOOKER, C. J., McGRATH and GRANT, JJ., concurred. LONG, J., did not sit.