### NIEDERHAUSER *v.* DETROIT CITIZENS' STREET RAILWAY CO.

1. SETTLEMENT—FRAUD—RESCISSION.
   One who seeks to rescind a settlement for fraud or mistake must first place the other party *in statu quo.*

2. SAME—TENDER—SUFFICIENCY.
   Plaintiff, after settling a claim against defendant for personal injuries, went with his attorney to defendant's office, where they notified defendant's agent that they repudiated the settlement on the ground of fraud, and inquired if he would take back the money paid plaintiff. On receiving a negative reply they started to leave, when the agent expressed a doubt as to their having any money, and asked to see it. Though they had arranged to obtain the money, they did not in fact have it with them, and they withdrew without making any direct answer to the agent's request. *Held,* that there was no such tender as would effect a rescission of the settlement and enable plaintiff to sue for the injuries.

Error to Wayne; Hosmer, J. Submitted October 8, 1902. (Docket No. 20.) Decided October 28, 1902.

Case by John Niederhauser against the Detroit Citizens' Street-Railway Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Moore & Moore* (*Edwin C. Bolton* and *Henry B. Shaw*, of counsel), for appellant.

*Brennan, Donnelly & Van De Mark* and *Henry L. Lyster*, for appellee.

MOORE, J. This suit was brought for the purpose of recovering for injuries received by plaintiff while a passenger on a street car owned by defendant. The circuit judge directed a verdict in favor of defendant. The case is brought here by writ of error.

It is the contention of plaintiff that he had a claim against defendant for injuries received by him October 26, 1899; that on November 1, 1899, he made a written agreement with Mr. Bolton, a lawyer, to collect said claim, and assigned him one-half thereof in consideration of his services. He also claims that Mr. Bolton had negotiations with the representatives of the company for a settlement, and was offered $1,300 unconditionally for a settlement of the claim, and $2,000 if certain conditions existed. Defendant denied that any such offers were made. It is the further claim of plaintiff that, by means of false representations and concealments of what had occurred between his attorney and the representatives of the company, he was induced on December 5, 1899, to settle his claim in full for $800. Defendant denies there was any fraud used to bring about this settlement, but insists plaintiff voluntarily and freely made it. It is the claim of plaintiff that, when he learned from Mr. Bolton the exact facts, he repudiated the settlement. Afterwards this suit was brought, and, as before stated, a verdict was directed by the circuit judge, who was of the opinion that no fraud had been shown in making the settlement.

A great many questions are raised by counsel which we

do not deem it necessary to discuss, as we think plaintiff has failed to put himself in a position to maintain this suit. The law is well settled that, if one seeks to rescind a settlement on the ground of fraud or mistake, he must, after discovering the fraud, place the other party *in statu quo*. *Jewett* v. *Petit*, 4 Mich. 508; *Crippen* v. *Hope*, 38 Mich. 344; *Pangborn* v. *Insurance Co.*, 67 Mich. 683 (35 N. W. 814); *Galvin* v. *O'Brien*, 96 Mich. 483 (56 N. W. 85). Counsel claim plaintiff did this by tendering back the money to defendant, while defendant denies that any sufficient tender was made. The testimony bearing upon that point is brief, and we quote it. Plaintiff testified:

"I was never at the railway office but once. That was some day or so after I received the money. I went there with Mr. Bolton. * * *

"*Q.* You got $800, of which you paid $150 to your physician?

"*A.* Yes, sir.

"*Q.* And you have used that $650?

"*A.* Yes, sir. * * *

"*Q.* You said that you were in the street-railway office the next day with Mr. Bolton?

"*A.* I think it was the next day or two afterwards.

"*Q.* What did you go down there for?

"*A.* To tender the money.

"*Q.* Who told you to do that?

"*A.* Mr. Bolton.

"*Q.* You were satisfied to take the money the day before, weren't you?

"*A.* I was the day before.

"*Q.* And Mr. Bolton told you the next day to go down and pay the money back. How much of the money did you have the next day?

"*A.* I think Mr. Bolton had the money.

"*Q.* Oh, you think he had the money?

"*A.* I don't know. I did not see it.

"*Q.* Where was your money?

"*A.* My money was in the bank.

"*Q.* In the bank. You never took your money back to tender any money, did you?

"*A.* They did not ask me to.

"*Q.* Who?

"*A.* Mr. Bolton.

" *Q.* You did not see any money with Mr. Bolton, did you?

"*A.* No, I did not see any.

" *Q.* And there was no money tendered to anybody, was there?

"*A.* Not that I know of or saw.

" *Q.* No, you did not see any money tendered back, but you think Mr. Bolton had the money. How do you know he had the money?

"*A.* Well, all I know is, he says, 'You come with me, and,' he says, 'we will tender that money back.'

" *Q.* Didn't he tell you, too, that Mr. Hutchins would refuse the money?

"*A.* No, sir.

" *Q.* Did not Mr. Hutchins ask him to let him see the money?

"*A.* He asked— He refused it, and as we was going out he says, 'Let's see your money.' Bolton says, 'You refused it once.' Bolton did not show him any money, that I seen. I think I would have seen it if he had shown any."

Mr. Bolton's version of what occurred is as follows:

" Mr. Niederhauser, Mr. Hubbard, and myself went down to the Detroit Citizens' Street-Railway Company at 12 Woodward avenue, and met Mr. Hutchins. Before going down there, we had arranged for raising money. We had arranged for tendering back to Mr. Hutchins—to the railway company—that $800, and whatever— There was a little interest, or whatever there would be on it. I did not take the money with me. When we got to Mr. Hutchins' office, we met Mr. Hutchins, and I told him that we repudiated that settlement; there was no settlement; that the boy had been unjustly dealt with, and the settlement was a fraud, and we came back to see if he would not take the money back. He says: 'No, sir; it is a settlement. It is final with me, and I will not take any money back.' After that conversation we came back to my office. After we left Mr. Hutchins' office, and while we were getting into the elevator— I think Mr. Hubbard and Mr. Niederhauser were in the elevator, and I was just getting in, and Mr. Hutchins, I think, had either stepped —there is a double doorway there—stepped in the doorway, and kind of stepped back, and he laughed, and in a sneering way he says: ' Ha, you fellows haven't got any

money. I never have seen the color of your money. Where is your money?' I don't remember that we made any reply at all. That is all I remember that was said. I might have said, 'You refused it;' something of that kind. I might have thrown back a remark at him. After that this suit was brought."

Mr. Hutchins' version of what occurred is as follows:

"Mr. Niederhauser, Mr. Bolton, and Mr. Hubbard came to my office. I met the parties in the hall. Mr. Bolton said, 'This is Mr. Niederhauser.' He said: 'We have come down to tender you the money back in the Niederhauser case. Will you accept it?' I said, 'No.' So Mr. Hubbard had started towards the elevator. Mr. Bolton and Mr. Niederhauser were still standing near me. I then went to ask for the money, so I said, 'Oh, wait a minute; let me see the money.' Mr. Bolton said, 'Come on, Niederhauser; come on, Niederhauser,' as he rushed off towards the elevator; 'he said he would not accept it;' and I said I would like to see the color of the money, and Bolton repeated it, 'Come on, Niederhauser,' and then all got in the elevator and went away. I did not see any money."

While the old rule that, to make a valid tender of money, there must be produced the precise sum in current money, which must actually be offered to the person to whom the tender is made, has been modified, it is not believed a case can be found where what was done here would be regarded as a valid tender. In *Chase* v. *Welsh*, 45 Mich. 345 (7 N. W. 895), Justice Campbell, speaking for the court, said:

"No sum of money whatever was tendered, and no tender in the proper sense made at all. There was no more than a proposition or offer to pay what might be ascertained as the proper sum; but the parties tendering had not informed themselves, and took no steps to do so beyond preparing a receipt in blank, to be filled up when the supposed judgment and interest should be figured up. This receipt purported to discharge the judgment. Prentis refused to sign it. There is some conflict as to what reason he gave, but, inasmuch as no sum of money whatever was produced or offered, all that it could have

amounted to at best was a manifestation of readiness to make payment when the proper amount was figured up. This was no tender of payment."

See, also, *Engle* v. *Hall*, 45 Mich. 57 (7 N. W. 239); *Selby* v. *Hurd*, 51· Mich. 1 (16 N. W. 180); *Potts* v. *Plaisted*, 30 Mich. 149.

Judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.