*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTOPHER KEEFER, KATHERINE KEEFER, CASEY KEEFER, LISA KEEFER, JASON BROWN, and DARCEL BROWN,

UNPUBLISHED
October 6, 2022

Plaintiffs-Appellants/Cross-Appellees,

v

No. 357491
Midland Circuit Court
LC No. 17-004954-CB

SCOTT NEAL,

Defendant-Appellee/Cross-Appellant.

Before: M. J. KELLY, P.J., and CAMERON and HOOD, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order dismissing their remaining claim against defendant, Scott Neal. On appeal, they challenge the order granting in part Neal's motions for summary disposition. In a cross-appeal, Neal contests the order allowing the disputed funds to remain in escrow through the pendency of this appeal. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiffs Christopher Keefer and Casey Keefer are experienced hunting guides and outdoor television hosts. Neal is a wealthy businessman from California. Christopher and Casey met Neal around 2008 when Neal traveled to Michigan to hunt white-tailed deer. Some time later, Christopher became interested in purchasing the rights to a particular deer feed formula. Christopher, Casey, and their father, Charles Keefer, approached Neal about financing a new company to produce and market the formula. Neal agreed, and the foursome became partners in Rack1, LLC. Neal owned 50% interest in Rack1 and Christopher, Casey, and Charles each owned equal parts of the remaining 50%.

Over the years Neal made a number of loans to Rack1 for operating and other expenses. Neal demanded payment on the loans, which Rack1 timely made. At some point, it became clear Rack1 was, in effect, defunct. Even so, Christopher and Casey made sure to timely pay on the Rack1 debt, funded mostly through other businesses they owned. In 2013, Rack1 renegotiated its

debt agreement with Neal to include, among other things, the addition of plaintiff Jason Brown as an obligor.

Rack1 continued paying on its debt to Neal, however, nearly two years later, in 2014, Christopher, Casey, and Jason wanted to move the obligor on the debt to R3 Holdings, another company they owned. Christopher signed a "Letter Agreement" which included this clause: "Assignment of Membership Interest Agreement. Neal will assign his 50% Membership Interest in Rack1, LLC back to the Company for $1.00 and a release by the Company and other Members of any and all liability associated with Rack1, LLC." In the caption below Christopher's signature, it stated: "Christopher Keefer, individually and on behalf of R3 Holdings, LLC, Rusted Rooster, LLC, Hatch Marketing Group, LLC, Rack1, LLC, Casey Keefer, and Jason Brown." Neal's signature line was blank.

In the summer of 2015, Christopher, Casey, and Jason entered negotiations with a third party to invest in their other companies, including R3 Holdings ("R3"). The investor apparently believed R3 held an interest in Rack1's debt. To close the deal, R3 would have to be relieved of any encumbrances, including the Rack1 debt. Christopher contacted Neal to renegotiate Rack1's debt.

On October 15 and 16, 2015, the parties executed a number of agreements titled: (1) Business Loan Agreement ("BLA"), (2) Restated Promissory Note, and (3) Assignment of Membership Interest Agreement ("the October 2015 assignment and release").[1] The Restated Promissory Note included as borrowers Christopher, Casey, Jason, and their respective spouses, Katherine Keefer, Lisa Keefer, and Darcel Brown.[2]

The October 2015 assignment and release was "made by and among Rack1, LLC . . ., and Charles R. Keefer, Christopher Keefer, Casey Keefer, and Scott Neal." It contained the following clause:

> Release. In consideration of, among other things, the benefits set forth in this Agreement, the Company and the remaining Members Charles R. Keefer, Christopher Keefer, and Casey Keefer, irrevocably and unconditionally release, waive, and discharge Scott Neal with respect to and from any and all claims, actions, obligations, liabilities, damages, losses, and expenses of any nature whatsoever, in law or in equity, which the Company and Members now have, or may have in the future, whether known or unknown, based upon or arising out of any contract, agreement, circumstance, event, acts, omissions, or facts occurring or existing before the signing of this Agreement, related to the Company, its operation, its Operating Agreement, or otherwise.

---

[1] Collectively, we call these three agreements the "October 2015 agreements."

[2] We refer to plaintiffs Katherine Keefer, Lisa Keefer, and Darcel Brown, collectively, as "plaintiff spouses."

Plaintiffs continued to pay on the loan, but almost two years later, they filed the complaint in this case. The complaint made a number of allegations, including fraud, breach of contract, and unjust enrichment. The trial court granted plaintiffs' motion to remit the debt payments to an escrow account through the pendency of the litigation.

Neal moved for summary disposition against Christopher and Casey under MCR 2.116(C)(7), (8), and (10), alleging in part that the October 2015 assignment and release relieved Neal of liability with respect to his interest in Rack1. Neal moved for summary disposition against Jason under MCR 2.116 (C)(8) and (10), asserting there was no evidence of any fraudulent conduct by Neal towards Jason. He moved for summary disposition against plaintiff spouses on a similar basis. The trial court largely granted the motions for summary disposition, but denied them as to plaintiffs' claims of promissory estoppel.

Plaintiffs then moved to amend their complaint to add a claim of member oppression, but the trial court denied the motion. Plaintiffs moved for reconsideration of the order on the motions for summary disposition and the order on the motion to amend. The trial court also denied these motions. However, it granted plaintiffs' motion to dismiss their remaining claim of promissory estoppel and to continue the escrow order through the pendency of an appeal. This appeal followed.

## II. TENDER-BACK RULE

Plaintiffs' first argument challenges the grant of summary disposition against Christopher and Casey's claims. The trial court granted summary disposition to Neal because Christopher and Casey failed to tender back to Neal the consideration received under the October 2015 assignment and release before they filed this lawsuit. Plaintiffs contend the trial court incorrectly applied the tender-back rule to Christopher and Casey's claims. They also argue the trial court erred when it concluded the October 2015 assignment and release barred Christopher and Casey's claims because, in their view, the assignment and release were invalid. We disagree.

## A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Smith Living Trust v Erickson Retirement Communities*, 326 Mich App 366, 380; 928 NW2d 227 (2018). We also review de novo "the parties' agreement, and any questions of statutory interpretation." *Id.* The trial court granted Neal's motion for summary disposition against Christopher and Casey's claims under MCR 2.116(C)(7).

> A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered. Moreover, the substance or content of the supporting proofs must be admissible in evidence. Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant. [*Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (citations omitted).]

## B. ANALYSIS

Michigan jurisprudence favors the binding nature of a release of liability. See, e.g., *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 374; 838 NW2d 720 (2013). Where a plaintiff seeks to invalidate a release and file a lawsuit against a released party, the plaintiff must first tender back their consideration received under the release. See *Stefanac v Cranbrook Ed Community*, 435 Mich 155, 165; 458 NW2d 56 (1990), quoting *Niederhauser v Detroit Citizens' Street R Co*, 131 Mich 550, 552; 91 NW 1028 (1902) ("[I]f one seeks to rescind a settlement on the ground of fraud or mistake, he must, after discovering the fraud, place the other party in *statu quo*."). Tender back must happen before a plaintiff "may even attempt to repudiate the release." *Rinke v Auto Moulding Co*, 226 Mich App 432, 436; 573 NW2d 344 (1997). This "tender-back" rule has only two exceptions: (1) when a defendant has waived a plaintiff's duty; and (2) where there is evidence of fraud in the execution. *Stefanac*, 435 Mich at 165.

Plaintiffs' complaint challenged whether they, in their individual capacities, were obligated to Neal for Rack1's debt. Neal moved for summary disposition, in part, on the basis of the October 2015 assignment and release, asserting that Christopher and Casey released Neal from potential liability with respect to his interest in Rack1. The trial court found Christopher and Casey were barred from filing a lawsuit against Neal because they failed to tender back their consideration received under the October 2015 assignment and release—Neal's membership interest in Rack1 We agree.

Plaintiffs filed suit against Neal for actions taken with respect to Neal's membership interest in Rack1. Under the terms of the October 2015 assignment and release, Neal was released from liability "with respect to and from any and all claims, actions, obligations, liabilities, damages, losses, and expenses of any nature whatsoever" related to his Rack1 membership interest. It is undisputed that Christopher and Casey did not tender back Neal's membership interest before filing this lawsuit. Therefore, the trial court was correct in its conclusion the tender-back rule barred Christopher and Casey's claims against Neal.

Plaintiffs present three arguments contesting the trial court's application of the tender-back rule. First, they contend the October 2015 assignment and release was not the type of agreement contemplated by the tender-back rule. Second, they argue Neal "waived" the tender-back rule as a defense. Finally, they aver that the exceptions to the tender-back rule apply to this case and it was not necessary for Christopher and Casey to have tendered back Neal's membership interest in Rack1 before filing suit. Although we address each argument, we conclude that each is meritless.

### 1. APPLICABILITY OF THE TENDER-BACK RULE

Plaintiffs argue that the tender-back rule is limited to "settlement situations where the parties have agreed to settle or compromise known claims between them to avoid litigation in exchange for a monetary payment of not pursuing those claims." In their view, this case does not involve an avoidance of litigation, nor "monetary payment." Therefore, the tender-back rule does not apply.

We disagree with the first assertion that this case does not involve an avoidance of litigation. Again, the October 2015 assignment and release states that Christopher, Casey, and

-4-

Charles "irrevocably and unconditionally release, waive, and discharge Scott Neal with respect to and from any and all claims, actions, obligations, liabilities, damages, losses, and expenses of any nature whatsoever, in law or in equity, which the Company and Members now have, or may have in the future." Plaintiffs characterize the October 2015 agreements as "debt restructuring." Yet, it is clear from the language of the October 2015 assignment and release that they were drafted in part to avoid litigation.

Likewise, there is no merit to plaintiffs' contention that, for the tender-back rule to apply, the consideration received must have some monetary value. In making this argument, it seems plaintiffs believe that Neal's 50% membership interest lacked monetary value. This is untrue. During his deposition, Christopher testified that Rack1's remaining members sold the company to a third party for $200,000 sometime after they executed the October 2015 agreements. Thus, it is unreasonable to conclude Neal's membership interest lacked monetary value. To the extent plaintiffs believe actual money must be exchanged for the tender-back rule to apply, this is also untrue. In *Rinke*, 226 Mich App at 434-435, for example, the consideration exchanged under the release agreement were shares of stock.

## 2. WAIVER OF DEFENSE

Plaintiffs next argue Neal "did not at the outset raise the tender-back rule as a defense to [p]laintiffs' claims and thus, the defense was waived." This argument defies logic. Again, the tender-back rule requires a plaintiff to tender back any consideration received under an agreement "before he may even attempt to repudiate the release." *Rinke*, 226 Mich App at 436. The law requires the tender back to occur *before* a plaintiff files their claim. Plaintiffs seem to argue that a defendant should assert the tender-back defense before any tender back occurs. Thus, the defendant should assert the tender-back defense while the plaintiff is contemplating—but has not yet filed—the lawsuit. This is nonsensical.

Plaintiffs also suggest that by attempting to tender back Neal's membership interest on December 18, 2019—after the trial court issued the opinion and order granting Neal's motion for summary disposition against Christopher and Casey—plaintiffs somehow satisfied their obligations under the tender-back rule. But a plaintiff who seeks to invalidate an agreement on the basis of fraud must *first* tender back their consideration under the agreement *before* they file the lawsuit. *Rinke*, 226 Mich App at 436. By waiting more than two years *after* they filed the complaint to tender back Neal's membership interest, plaintiffs plainly failed to meet this requirement. It appears plaintiffs' "tender back" of Neal's membership interest was merely a perfunctory move by plaintiffs to address the trial court's concerns regarding plaintiffs' failure to return Neal's membership interest.

## 3. EXCEPTIONS TO THE TENDER-BACK RULE

Plaintiffs next argue that the trial court should not have granted summary disposition because Neal "took advantage of Chris[topher's] and Casey's belief that they were responsible for Rack 1's debt . . . ." They allege that the claim should have been allowed to proceed because they "have raised issues of material fact whether the transaction is void based on [Neal's] fraudulent conduct." Again, there are only two exceptions to the tender-back rule: (1) "waiver of the plaintiff's duty by the defendant;" and (2) "fraud in the execution." *Stefanac*, 435 Mich at 165.

Plaintiffs do not explain how either of these exceptions is satisfied. Thus, this argument is abandoned. See *MOSES Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006) ("If a party fails to adequately brief a position, or support a claim with authority, it is abandoned.").

Because the trial court correctly concluded that the tender-back rule barred Christopher and Casey's claims, we need not address plaintiffs' arguments regarding the validity of the release.

## III. MEMBER OPPRESSION

Plaintiffs next argue that the trial court erred in denying the motion to amend their complaint because there was a question of fact whether the proposed member oppression claim was barred by the October 2015 assignment and release. Plaintiffs also challenge the trial court's denial of their motion for reconsideration regarding the motion to amend. In their view, the trial court abused its discretion in refusing to consider evidence showing Jason was a Rack1 member in October 2015. We disagree.

## A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's decision on a motion to amend. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 215-216; 859 NW2d 238 (2014). Similarly, the grant or denial of a motion for reconsideration is also reviewed for an abuse of discretion. *St John Macomb-Oakland Hosp v State Farm Mut Auto Ins Co*, 318 Mich App 256, 261; 896 NW2d 85 (2016). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

## B. ANALYSIS

## 1. MOTION TO AMEND

Under MCR 2.118(A)(2), "a party may amend a pleading only by leave of the court or by written consent of the adverse party." A trial court should "freely" grant leave to amend "when justice so requires." MCR 2.116(A)(2). A motion to amend may be denied only for particularized reasons, such as: "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment." *Lane v KinderCare Learning Centers, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998). An amendment is futile if it is "legally insufficient on its face, and the addition of allegations that merely restate those allegations already made . . . ." *Wormsbacher v Seaver Title Co*, 284 Mich App 1, 9; 772 NW2d 827 (2009).

The trial court denied plaintiffs' motion to amend on the basis of futility, relying on its earlier reasoning in the motions for summary disposition. Again, there is no error on this basis. Plaintiffs sought to add a claim of member oppression, which plaintiffs stated concerned "exactly the same facts set forth in the initial complaint"—specifically, Neal's membership interest in Rack1. As discussed, any claim by Christopher and Casey against Neal arising from Neal's membership interest in Rack1 was barred by the tender-back rule. See discussion, *supra*. Plaintiffs' proposed member oppression claim was futile because it also concerned Neal's

-6-

membership interest in Rack1. Thus, the trial court did not abuse its discretion in denying the motion to amend.

Plaintiffs' argument challenging the trial court's conclusion is meritless. They contend the trial court should have considered Jason and Rack1's tax documents from 2014 and 2015 as evidence that there was a question of fact as to the validity of the October 2015 assignment and release. In their view, leave to amend should be "freely" given and the trial court abused its discretion in failing to consider the tax documents as evidence that the October 2015 assignment and release was invalid.

Plaintiffs' argument fails to account for the tender-back rule. Again, as a prerequisite to their lawsuit, Christopher and Casey should have tendered back their consideration received under the October 2015 assignment and release, which the brothers did not do. Plaintiffs' argument, which challenges the validity of the October 2015 assignment and release, fails to explain how their lawsuit circumvents the tender-back rule. Moreover, this argument misstates the timeline of this case. The tax documents were not produced until *after* the trial court had already denied the motion to amend. Plaintiffs' counsel alluded to the existence of the documents during oral argument on the motion, but they were not produced at that time.

Plaintiffs' argument also fails to account for the fact that it was *plaintiffs* who possessed the tax documents in question. These documents were from tax years 2014 and 2015, but plaintiffs did not file suit until 2017. Presumably, the tax documents were in plaintiffs' possession throughout this case. Plaintiffs cannot fault the trial court's failure to consider evidence when it was plaintiffs who failed timely produce the evidence. *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002) (citation omitted) ("A party is not allowed to assign as error on appeal something which his or her own counsel deemed proper at trial since to do so would permit the party to harbor error as an appellate parachute.").

## 2. MOTION FOR RECONSIDERATION

Plaintiffs' arguments on appeal also challenge the trial court's denial of plaintiffs' motion for reconsideration of the denial of the motion to amend. Plaintiffs' statement of the questions presented does not allege that the trial court erred in denying plaintiffs' motion for reconsideration. Thus, this argument is abandoned and we decline to consider it now. See *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 517; 838 NW2d 915 (2013) ("A party abandons an issue when it fails to include the issue in the statement of questions presented in its appellate brief and fails to provide authority to support its assertions.").

## IV. PLAINTIFFS' FRAUD CLAIMS

Plaintiffs argue the trial court erred in granting Neal's motion for summary disposition as to Jason and plaintiff spouses' claims of actual fraud and fraud in the inducement. They allege that Neal made fraudulent statements to Christopher and Casey, which they claim should have been imputed to Jason and plaintiff spouses. We disagree.

## A. STANDARD OF REVIEW

The trial court granted Neal's motion for summary disposition of plaintiffs' actual fraud and fraud in the inducement claims under MCR 2.116(C)(10).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden*, 461 Mich at 120 (citations omitted).]

## B. ANALYSIS

The term "fraud" is defined as "[a] knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment." *Black's Law Dictionary* (11th ed). To sustain a claim of actual fraud or fraud in the inducement, a plaintiff must demonstrate:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 499; 892 NW2d 467 (2016) (citation omitted); see also *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 477; 666 NW2d 271 (2003).]

Both actual fraud and fraud in the execution require a plaintiff to demonstrate an intent to deceive. See *Gen Electric Credit Corp v Wolverine Ins Co*, 420 Mich 176, 184; 362 NW2d 595 (1984).

In granting Neal's motion for summary disposition against Jason, the trial court reasoned that it was likely true that Jason was personally liable on the Rack1 debt because Jason signed the Amended Promissory note in 2013. The trial court noted Jason's sworn testimony where he stated he signed the amended promissory note to "support [his] business partners." Thus, the trial court concluded that any statement regarding Jason's personal liability was likely true. It determined that summary disposition was appropriate as to Jason's claims because plaintiffs failed to "point to any other statements that would have induced [Jason] into signing the 2015 BLA and Promissory Note." Similarly, with respect to the motion for summary disposition against plaintiff spouses, the trial court stated, "[t]here is no evidence within the record that shows that [Neal] made any representation to Plaintiff Spouses."

There is no error in the trial court's reasoning. When a party moves for summary disposition under MCR 2.116(C)(10), they must "specifically identify the issues as to which [they] believe[] there is no genuine issue as to any material fact." *Coblentz v Novi*, 475 Mich 558, 569; 719 NW2d 73 (2006), quoting MCR 2.116(G)(4). Once the movant has identified these issues, "an adverse party may not rest upon the mere allegations or denials of his or her pleading, but

-8-

must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." *Coblentz*, 475 Mich at 569, quoting MCR 2.116(G)(4). The trial court is directed to grant the motion for summary disposition if the non-movant's response is inadequate. *Coblentz*, 475 Mich at 569.

Neal argued in his motions for summary disposition that he never made any misrepresentations to Jason or plaintiff spouses and, to the extent Neal did make any representations to Jason and plaintiff spouses, these were merely statements of opinion. Plaintiff spouses' response to the motion contained no exhibits or other documents dispelling Neal's assertions. Jason's response included Neal's e-mail stating Jason had "a personal guarantee" on the loan to Neal. However, this statement could hardly show a genuine dispute of fact because, by signing the Amended Promissory Note in his individual capacity, Jason likely was personally liable to Neal. In short, Neal satisfied his burden as the moving party, and plaintiffs failed refute Neal's assertions.

On appeal, plaintiffs claim that the trial court nevertheless erred in granting Neal's motion for summary disposition as to plaintiffs' allegations of fraud. They claim Neal's statements to Christopher and Casey should be imputed to Jason and plaintiff spouses. That is, Neal's purportedly fraudulent statements made to Christopher and Casey are presumed to have been conveyed to Jason and plaintiff spouses, and that Jason and plaintiff spouses acted upon the statements by signing the October 2015 agreements.

It is true a party may be found liable for fraudulent statements made to a third party. See *Cormack v American Underwriters Corp*, 94 Mich App 379, 386; 288 NW2d 634 (1979). However, plaintiffs' argument suffers from the same defect discussed above. In response to Neal's motions for summary disposition, plaintiffs presented no evidence showing that the allegedly fraudulent statements were ever made to Jason or plaintiff spouses. In fact, their deposition testimonies demonstrated Jason and plaintiff spouses did *not* talk to Christopher or Casey about any statements made by Neal in relation to the Rack1 loans. Because plaintiffs failed to present any evidence demonstrating a genuine question of fact, the trial court had to grant Neal's motions for summary disposition as to Jason and plaintiff spouses' actual fraud and fraud in the inducement claims. *Coblentz*, 475 Mich at 569.

## V. UNJUST ENRICHMENT

Plaintiffs argue the trial court erred in dismissing their unjust enrichment claim because Neal received payments beyond what was due under the 2015 agreements. We disagree.

## A. STANDARD OF REVIEW

The trial court granted Neal's motion for summary disposition as to the unjust enrichment claim under MCR 2.116(C)(8).

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding

a motion brought under this section, a court considers only the pleadings. [*Maiden*, 461 Mich at 119-120 (citations omitted).]

"Whether a specific party has been unjustly enriched is generally a question of fact." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). "However, whether a claim for unjust enrichment can be maintained is a question of law, which we review de novo." *Id.*

## B. ANALYSIS

To establish a claim of unjust enrichment, a party must show: "(1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013). Where these criteria are satisfied, courts will imply a contract between the parties. *Belle Isle Grill Corp*, 256 Mich App at 478. "However, a contract will be implied only if there is no express contract covering the same subject matter." *Id.*

In granting Neal's motion for summary disposition as to the unjust enrichment claim, the trial court reasoned that the parties "signed the Business Loan Agreement and Promissory Note that made them personally liable for the original loan to Rack 1 [sic]. Those contracts control the Parties' relationship with respect to the Rack 1 [sic] debt. Since those contracts cover the 'same subject matter,' summary disposition is appropriate." The evidence presented to the trial court shows that, before the parties executed the October 2015 agreements, they completed the Amended Promissory Note which was intended to cover "the amount of the original Promissory Note dated March 20, 2012" and "the *Additional Loan* amount of $100,000 . . . give[n] by Scott Neal . . . to Rack1, LLC and Jason Brown." At first blush, it appears summary disposition was appropriate because the Amended Promissory Note was an express contract covering the payments predating the October 2015 agreements.

However, the trial court decided this issue under MCR 2.116(C)(8). Again, a trial court's decision under subsection (C)(8) may only consider the pleadings. *Maiden*, 461 Mich at 119-120. In granting Neal's motion for summary disposition as to the unjust enrichment claim, the trial court clearly relied on evidence outside the pleadings, which normally would not justify summary disposition under subsection (C)(8). *Maiden*, 461 Mich at 119-120.

Even so, this Court "will not reverse where the right result is reached for the wrong reason." *Glazer v Lamkin*, 201 Mich App 432, 437; 506 NW2d 570 (1993). Neal also moved for summary disposition under MCR 2.116(C)(10), which does not allow the nonmoving party to "rest upon the mere allegations or denials of his or her pleading" *Maiden*, 461 Mich at 120, quoting MCR 2.116(G)(4). Under subsection (C)(10)'s burden-shifting framework, the movant "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact." *Maiden*, 461 Mich at 120. Once they have done this, "an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." *Id.*

Neal alleged plaintiffs' claim of unjust enrichment was invalid because there was an express contract covering the same subject matter. He supported this assertion with documentary evidence of the loan agreements that predated the October 2015 agreements. In their brief contesting the motion for summary disposition, plaintiffs again argued Neal was unjustly enriched by the payments predating the October 2015 agreement. They did not provide any exhibits disputing the express contract covering the payments at issue. Had the trial court considered this issue under MCR 2.116(C)(10), it would have concluded summary disposition was appropriate under MCR 2.116(C)(10) because Neal satisfied his burden by showing that there was an express contract covering the payments, and plaintiffs failed to refute this assertion with documentary evidence to the contrary. Although summary disposition was granted under MCR 2.116(C)(8), which prohibits consideration of evidence outside the pleadings, the trial court reached the right result, albeit for the wrong reason, when it concluded plaintiffs' unjust enrichment claim was unsustainable.

## VI. ESCROW ORDER

Neal contends the trial court erred when it ordered plaintiffs' loan payments to remain in the escrow account throughout the appeal to this Court. Neal argues he prevailed in the trial court and, therefore, the trial court's final order should have triggered the release of the funds from the escrow account. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

An issue is preserved if it is raised in the trial court. *Peterman v State Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Neal argues the trial court erred in ordering that its earlier escrow order be continued while the appeal was pending before this Court. On April 7, 2021, plaintiffs moved the trial court to order the escrow order continue and Neal did not challenge this motion. Neal made earlier arguments regarding the initial grant of the escrow order. However, Neal's specific argument—that the trial court erred in granting plaintiffs' motion to continue the escrow order through this appeal—is unpreserved because Neal waited to raise it until after the trial court entered the final order in this case. *Id*.

Generally, our review of this issue is de novo because this issue concerns the interpretation of court rules and an award of equitable relief. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008); *Bint v Doe*, 274 Mich App 232, 234; 732 NW2d 156 (2007). Because Neal's argument is unpreserved, it is reviewed for plain error. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*., quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 443; 906 NW2d 482 (2017), quoting *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

## B. ANALYSIS

We do not need to consider Neal's arguments as to this issue. In the preceding issues, plaintiffs make a number of challenges to the trial court's order on the motions for summary disposition. We conclude plaintiffs' arguments are meritless and the trial court correctly found in Neal's favor by dismissing plaintiffs' claims. This issue, which concerns the allocation of plaintiffs' payments on their promissory note to Neal during the pendency of this appeal, is moot. See *Black's Law Dictionary* (11th ed) (Defining the term "moot" as: "[h]aving no practical significance; hypothetical or academic."). Plaintiffs maintain a debt to Neal under the October 2015 agreements. The trial court "f[ound] it equitable and just the [trial] [c]ourt's September 17, 2018 Escrow Order continue while Plaintiffs seek an appeal." The question of whether the trial court erred in granting plaintiffs' motion to maintain the escrow order is moot because plaintiffs no longer have a legitimate claim to the funds.

Affirmed.

/s/ Michael J. Kelly
/s/ Thomas C. Cameron
/s/ Noah P. Hood